## THE STATE v. OLIVE M. NIEUHAUS, Appellant.

### Division Two, March 9, 1909.

1. **INDICTMENT: Maiming: Disfiguring: One Count.** The indictment may charge wounding and disfiguring as one offense. Either maiming, wounding or disfiguring may by itself constitute but one offense, but where all resulted from the same assault with a whip and a hot iron they may all be charged in one count as one offense.

2. **————: ————: ————: ————: One Assault.** And where the wounding, maiming and disfiguring were done as a part of the one unlawful offense, though with a whip and a hot iron, there was but one assault, though there was a short interval of time between the whipping with the whip and the burning with the hot iron.

3. **————: Duplicity** in an indictment, there being no demurrer or motion to quash or motion to elect, is cured by verdict.

4. **————: Wounding: Deadly Weapon: Proof.** An indictment, drawn under section 1849, Revised Statutes 1899, charging defendant with having wounded, maimed and disfigured a child with a whip and a hot iron stove-lid lifter, need not allege that either was a deadly weapon, and it being not necessary to so charge it was not necessary to prove that they were deadly weapons.

5. **————: ————: ————: Intent to Kill.** Nor was it necessary to charge that the assault was made with an intent to kill.

6. **————: ————: Resulting in Death: Verdict.** Nor is it necessary for the jury to find that had the assault resulted in death it would have been murder or manslaughter, nor for the indictment to so allege.

7. **WOUNDING: What Is?** The burning of a child with a hot iron stove-lid lifter, or whipping with a whip, "with such severity as to break, cut or burn entirely through the skin upon her body and to her flesh," constitutes a wounding within the meaning of section 1849, Revised Statutes 1899.

8. **DISFIGURING: What Is?** The word "disfigure" has no technical meaning, and is to be considered in its plain and ordinary sense. It means to mar the figure and to render less perfect and beautiful in appearance. Burning and lacerating the flesh, especially if followed by scars or running sores, is "disfiguring" as used in the statute.

9. **WOUNDING AND DISFIGURING: Caring for Sores.** Permitting the prosecutrix to testify that defendant did not put anything on her sores or burns after the assault, is not such prejudicial error as would authorize a reversal.

10. ———: **Prior Habits of Prosecutrix.** The court did not err in refusing to permit the defense to cross-examine the prosecutrix as to her habit of lying and to prove by her that prior to the day of the assault she had an inveterate habit of lying, where defendant was herself a witness and testified that she whipped prosecutrix because she lied to her on the particular day about putting coal oil in the stove, and where the defense was permitted to require prosecutrix to give a full explanation of defendant's assigned reason for the assault, which was that she had not put away certain ironed clothes.

11. ———: **Burns: Competent Witness.** A mother, in middle life, who has raised children of her own, is qualified, by common observation and experience, to testify that the scars she saw on prosecutrix looked like burns, and that they appeared to be made by an instrument which was applied in a continuous stroke.

12. ———: **Instruction for Common Assault.** Where the indictment is for felonious wounding and disfiguring, and does not charge an assault with intent to kill, either with or without malice aforethought, no instruction for common assault should be given.

Appeal from Perry Circuit Court.—*Hon. Jos. J. Williams,* Special Judge.

AFFIRMED.

*John V. Noell* for appellant.

(1) Either the instrument used to inflict the injury must be a dangerous weapon, or the wound inflicted must be dangerous. If the first instruction given by the court is correct law, then there can be no such offense as a common assault and battery in any case where the skin is broken; even if it is done by a scratch with the finger nails; and the court makes this clear in its second instruction given to the jury, which tells them, "that if defendant struck Maggie Shine with a whip, or burned her with a hot iron stove-lid lifter, with such severity as to break, cut, or burn entirely through the skin upon said Maggie Shine's body, and to her flesh, then said Maggie Shine was wounded by defendant within the meaning of these instructions." It is elementary law that every wound in-

cludes the breaking of the skin, whether it be given in a felonious assault or a common assault and battery, and whether it is produced by a stroke, a cut or a burn. There was not a scintilla of evidence that the stove-lid lifter or the riding whip with which the prosecutrix claimed that she was burned and whipped was a deadly or dangerous weapon, or that any of the wounds was dangerous; on the contrary, the evidence shows that neither the instruments alleged to have been used nor the injuries inflicted were dangerous. This being the case, the 1st, 2d and 3d instructions on the part of the State should not have been given, as there was no evidence on which to base them. Carrice v. State, 11 Mo. 579; Jennings v. State, 9 Mo. 862; State v. Bailey, 21 Mo. 484. (2) Appellant contends that the court erred in refusing the second instruction asked by defendant, telling the jury that they could not find defendant guilty of any greater offense than a common assault, as the evidence failed to show a dangerous wound or a dangerous weapon used. (3) There is nothing in the evidence which warranted a finding that prosecutrix had been "disfigured" by the act of defendant. In the first place, there was no injury to prosecutrix on any part of her body except that part which law and decency require her to keep concealed from the vision of others; in the next place the so-called "scars" were nothing but red and white spots, which Dr. Vessels testified that time would probably obliterate. But appellant contends that even if these spots or so-called "scars" would come within the definition of "disfigure" in its ordinary meaning, yet, unless they were produced by an assault made with a deadly or dangerous weapon, or were the result of dangerous wounds, they would not amount to a disfigurement within the meaning of the law as construed by repeated decisions of this court. Authorities cited in point 1. (4) The court erred in preventing defendant's counsel from cross-examining prosecutrix as to

her habit of lying, and as to her being whipped on the occasion complained of for lying. Defendant stood in the place of a parent to the prosecutrix, and had a right to administer reasonable corporal punishment to correct her faults. Deskins v. Gese, 85 Mo. 485; Haycraft v. Grigsby, 88 Mo. App. 354; 1 Bish. Cr. Law (7 Ed.), secs. 881 and 882. (5) The court erred in permitting Theresa Moranville and Martina Tucker, two witnesses for the State, to testify over the objection of defendant as to the probable instruments with which the welts and sores on Maggie Shine were inflicted, and as to how the instrument with which Maggie was burned was probably held and used. This was not a subject for expert testimony, and the court should not have permitted it. Gavisk v. Railroad, 49 Mo. 274; Gregory v. Chambers, 78 Mo. 294; Allen v. Railroad, 183 Mo. 411. Neither of these two witnesses was qualified to testify as an expert in relation to acid and solid burns; yet the court, over the objection of defendant's counsel, permitted them to give their opinions as to the difference between these two kinds of burns, and to express their opinion that the burns on Maggie Shine were caused by a heated solid. Appellant insists that the admission of this testimony was prejudicial and reversible error. Boring v. Railroad, 194 Mo. 541; White v. Fire Ins. Co., 97 Mo. App. 590; Graney v. Railroad, 157 Mo. 666. (6) The indictment charges that the prosecutrix received great bodily harm as the result of injuries inflicted by defendant, and section 1849, under which the indictment was drawn, as construed by the Supreme Court in the cases of Carrice v. State, 11 Mo. 579; Jennings v. State, 9 Mo. 862, and State v. Bailey, 21 Mo. 484, says that danger to life is involved in a prosecution thereunder; yet the trial court ruled that these issues of great bodily harm and danger to the life of the prosecutrix were not involved in this case, and refused to permit defendant to introduce testimony as to said issues.

Moreover, the court refused instructions 3, 4, 5 and 10, asked by defendant relating to these issues. Appellant submits that the lower court tried this case upon the erroneous theory that any wound, however slight, made in any manner whatever, whether made with a deadly or dangerous weapon or not, would be sufficient to make a case under section 1849. Under the instructions given by the trial court to the jury, defendant would have been amenable to the provisions of section 1849 if she had in a struggle broken the skin of the prosecutrix by a scratch with her finger nail.

*Herbert S. Hadley*, Attorney-General, and *F. G. Ferris*, Assistant Attorney-General, for the State.

The indictment is sufficient in form and substance. It fully informed defendant of the nature and cause of the accusation against her. R. S. 1899, sec. 1849; State v. Freeman, 21 Mo. 481; State v. Bailey, 21 Mo. 484; State v. Bohannan, 21 Mo. 490; Kelley's Crim. Law, secs. 580, 581; State v. Van Zant, 71 Mo. 543; State v. Moore, 65 Mo. 606. (a) Defendant's brief urges that ''the indictment is fatally defective in that two separate and distinct, felonies are charged in one count.'' The basis for this point, defendant declares, is the fact that two assaults are alleged, one with a rawhide whip and one with a hot iron stove-lid lifter. The offense charged is the maiming, wounding and disfiguring of a person. It is a single offense; for, while either maiming, wounding or disfiguring may by itself constitute an offense, all·of them together do no more when they are component parts of a single transaction, as in this case. It is also an offense which may be committed by many means. In this case the indictment alleges that it was committed by means of a rawhide whip and also by means of a hot iron stove-lid lifter. These allegations are not repugnant, and the count is not double. Bishop's New Crim. Proc. (4 Ed.), secs. 434, 438; Joyce on Indict-

ments, secs. 399, 400, 401; State v. Myers, 198 Mo. 232; State v. McDonald, 67 Mo. 18. (b) Defendant is too late in now for the first time raising objection to the indictment on the ground that it is duplicitous. Defendant did not demur to the indictment, she did not move to quash it, she did not move to require the State to elect upon which one of the offenses alleged therein (if more than one) it would proceed to trial. Duplicity in an indictment is a defect which is cured by verdict. State v. Fox, 148 Mo. 524; Bishop's New Crim. Proc. (4 Ed.), sec. 443; State v. Wilson, 143 Mo. 344; State v. Nagel, 136 Mo. 49; State v. Blakely, 184 Mo. 187. (c) It is not necessary that the indictment charging the offense of maiming, wounding and disfiguring should allege that the act was done with a deadly or dangerous weapon, or that the wounds inflicted were of a dangerous character. State v. Moore, 65 Mo. 606; State v. Freeman, 21 Mo. 481. And a verdict of guilty of wounding under such an indictment is sustained by evidence showing an injury to the person by which the skin is broken. Especially is this true if "there is a scar left still," made by the wound. State v. Leonard, 22 Mo. 450; 8 Words and Phrases, 7528. And as to disfiguring, proof of an injury which impairs the beauty, symmetry or appearance of a person, or renders a person unsightly, should be sufficient under the dictionary definition of "disfigure."

GANTT, P. J.—At the April term, 1907, of the circuit court of Perry county, an indictment was returned charging that the defendant, at said county on January 11, 1907, feloniously and willfully assaulted one Maggie Shine, and with a rawhide whip, of the length of three feet and of the diameter of three-fourths of an inch at the large end thereof, and of

the diameter of one-fourth of an inch at the small end of said whip, and with a hot iron stove-lid lifter, of the length of nine inches, of the thickness of one inch and of the weight of one pound, willfully and feloniously, by the act and procurement of the said Olive Nieuhaus, did strike, wound, maim, disfigure, cut and stab her the said Maggie Shine, then and there with said rawhide whip, and with the said hot iron stove-lid lifter, in and upon the face, neck, breast, abdomen, arms, hips, legs and body of her, the said Maggie Shine, and did feloniously beat, bruise, maim, burn and wound her, the said Maggie Shine, and the said Maggie Shine then and there in manner and form aforesaid was greatly maimed, wounded and disfigured against the peace and dignity of the State.

At the same term of court, the defendant applied for and was granted a change of venue from the regular judge of said court, and it appearing that the defendant and the prosecuting attorney could not agree upon any attorney as a special judge, the cause was set down for the 8th of July, 1907, and the Honorable Joseph J. Williams, judge of the 21st Judicial Circuit, was 'called and requested by Judge Killian to hold said court, and on the 8th of July, 1907, Judge Williams appeared in response to said request and assumed the direction of the said cause. The defendant then made another application for a change of venue from said county on the ground that the inhabitants thereof were prejudiced against her. This application was heard and overruled and the cause was then continued until the October term, 1907. On the 21st of October, 1907, the defendant was arraigned and her plea of not guilty was entered. A jury was impaneled and the cause heard and resulted in a verdict of guilty of wounding and disfiguring Maggie Shine both by whipping her with a whip and by burning her with a hot stove-lid lifter as charged in the indictment, and assessing her punishment at imprison-

ment in the penitentiary for two years. In due time, the defendant filed her motions for a new trial and in arrest of judgment, which were by the court overruled. Sentence was then pronounced against the defendant and from that sentence she has appealed to this court.

The evidence, on the part of the State tended to prove that on the 11th day of January, 1907, Maggie Shine was a girl not quite thirteen years old. On that date she was living with Joseph Nieuhaus and his wife, the defendant, at their home at Point Rest, in Perry county. She had lived with them two or three years. She was an orphan, her mother and father both having been dead a number of years. Mr. Nieuhaus conducted a store at Point Rest and used the second story of his store building for a residence. On the 11th of January, 1907, which was Friday, in the afternoon Mrs. Nieuhaus left her baby in Maggie's care and directed her to put some ironed clothes away, and then went down stairs. Upon returning up stairs and finding that her clothes had not been put away, she inquired of Maggie why it had not been done. Maggie explained that the baby had been cross and required her whole attention, whereupon the defendant said, "Now, I am going to whip you and burn you, you know that work was to do." Defendant went down stairs where she remained for a short time and until her husband left the store and went to the willows, several hundred yards distance. Returning up stairs the defendant sent her little boy, Henry, down stairs to watch the store. She then took Maggie into a room, required her to strip off her clothes and put her across the bed face downward. From her drawer she took a cowhide whip and with it beat Maggie's bare flesh. Maggie screamed, whereupon the defendant sitting upon her head to smother the screams continued to belabor her with the whip, and threatened her with a burn for every time she screamed. Letting

Maggie up, the defendant then went to the kitchen and procured a hot stove-lid lifter with which she inflicted burns upon Maggie's chest and abdomen. Defendant then sent Maggie to the corn crib near by to fetch some corn cobs. Mary Moranville, a little school girl friend of Maggie's, passing at the time on her way home from school, heard Maggie crying and sobbing at the crib. She went to the crib and learned of Maggie's mistreatment. She went home and told her sister and her mother what she had learned. On the next Monday, it was the 14th of January, Maggie was at school, and there in the closet Emma Moranville made an examination of the burns on Maggie's body, observing that some of them had scabs and some of them were raw and stuck to her clothing. On Wednesday the 16th of January, Mrs. Theresa Moranville met Maggie in a field between Point Rest and the schoolhouse and examined the upper part of Maggie's body, where she found four or five wounds on the fore part of her body and many welts on her back. She saw evidence in several places that blood had been drawn by a whip. She also found bruises and green places on her body as large as a half dollar. When Maggie returned to school on Monday, January 14th, Miss Codenbach noticed that Maggie appeared to be ill, as she did not play with the pupils as usual and seemed to be trying to keep her clothes away from her person. At the instance of Miss Codenbach some five or six of the neighbors gathered at the home of Mrs. Theresa Moranville on the 22d of January and made a thorough examination of Maggie's clothing and injuries. On the 29th of January Dr. Frank M. Vessels examined her injuries and about the same time also Dr. J. F. Morton examined her. From the testimony of these neighbors and physicians, it appeared that there were seven principal burns and four smaller ones on Maggie's chest and abdomen, all of which appeared to have been made by the scraping of a hot iron or the use

of some blunt instrument. One burn, near the collar
bone, was in form and size like that of the end of the
stove-lid lifter described as the instrument by means
of which the burns were inflicted. There was the ap-
pearance of a continuous burn started on the left
breast, passing down the left side and across the
abdomen, as if made by one stroke with a blunt iron
instrument, which touched heavier and burned deeper
as it passed across and over the ribs and over the
prominent places of the abdomen, leaving severe
wounds at the prominent points and merely a red
streak across the depressions in her body. The marks
of this stroke between the prominent places varied
in width from one-half an inch to three-fourths of an
inch, and its whole length was about eighteen inches.
The large and deep burns at the prominent places,
one of which was as large as a dollar, and several
of which were of the size of a half dollar, were, at
the time of the examination by the physicians, run-
ning sores, and the marks of the stroke connecting
them were indicated by the redness of the skin. Both
of the physicians were of the opinion that these burns
were made by a blunt iron instrument and could not
have been made by a hot liquid or by the spilling of
acid. On Maggie's shoulders, back, thighs and legs
were found many welts as if made by a whip. Dr.
Vessels counted thirty-two welts, which were prom-
inent and distinct. In some places the welts were so
thick that they ran into one another and made a con-
tinuous bruise. In some places the whip had broken
the skin. The individual whip welts were about the
width of a lead pencil. There were also other bruises
on her body. Mrs. Moranville and the two physicians
examined Maggie's person on the day of the trial and
found scars at the places where on the previous ex-
amination they had found the burns and whip wounds.
Both of these physicians testified that some of the burns
and whip wounds had penetrated both layers of the

skin and the scars would remain as permanent disfigurements.

The defendant in her own behalf testified that she had never burned Maggie at any time, and had no idea as to the cause of the burns unless it was the fact that Maggie had knocked down a bottle of carbolic acid while dusting off a shelf. She remembered that some of the acid had spilled on Maggie's arm. She admitted that she had whipped Maggie some time in January, the exact date she had forgotten, with a small riding whip, but the whipping was not severe. She testified she whipped her in order to break her of the habit of lying, the immediate cause of the whipping being that Maggie had poured coal oil in the stove in order to kindle the fire and denied that she had done so when accused by the defendant of having done so. She explained the cut of Maggie's fingers by saying it was done while cutting kindling, and that Maggie had told her that she made the bump on her head by running against a tree at school. She admitted also that one time she had paddled Maggie with a stick, which she described as a little piece of pine about a quarter of an inch thick and about an inch wide and about a half-yard long. She said that she did not examine Maggie after she had whipped her and Maggie had never complained to her of having wounds or sores or scars or of anything hurting her. She explained her failure to have the whip at the trial by saying that no one had requested her to bring it. She denied that she had whipped Maggie because she had not put away the ironed clothes and averred that Maggie had been in the habit of lying and on the occasion that she whipped her admitted she had lied about putting the coal oil into the stove. She said she had taken Maggie to raise and was very fond of her and had always treated her with kindness and gave her the same motherly care and treatment which she accorded to her own children; and that she had never had occasion

to whip her own children with that whip, as her chil-
dren did not lie.  She testified that on the Sunday
afternoon following the Friday on which it was alleged
that she had whipped Maggie, Maggie was playing and
singing with Esther Hagar, and in this she was cor-
roborated by Esther.  She also testified that she and
Mrs. Moranville had not been on speaking terms for
more than a year, for the reason that she would not
allow Maggie to play with Mrs. Moranville's little
girl, who was a very bad child.  Several witnesses
testified to the good reputation of the defendant and
several were introduced to contradict Maggie Shine
on important matters.  The testimony of two of the
witnesses tended to show that Mr. Nieuhaus did not
go to the willows January 11th.  Mrs. Moranville, how-
ever, in rebuttal testified that he did.

Maggie Shine testified that the occasion of her
playing and singing with Esther Hagar was on the
Sunday before she was whipped and not on the Sun-
day afterwards.  As to the spilling of the carbolic
acid Maggie explained that the acid bottle fell upon
the wood box, under the shelf, where it spilled, and
that none of the acid struck her.  Mr. Nieuhaus cor-
roborated the testimony of his wife as to the spilling
of the bottle of carbolic acid by Maggie and as to
Maggie being whipped for putting coal oil in the stove
and then lying about it, and as to the treatment of
Maggie by the defendant.

I.  This prosecution is for violation of section
1849, Revised Statutes 1899, which provides, "If any
person shall be maimed, wounded or disfigured, or re-
ceive great bodily harm, or his life be endangered,
by the act, procurement or culpable negligence of
another, in cases and under circumstances which would
constitute murder or manslaughter if death had ensued,
the person by whose act, procurement or negligence
such injury or danger of life shall be occasioned shall,

in cases not otherwise provided for, be punished," etc. This section has often been considered by this court and it has been uniformly ruled that, it is necessary for the indictment to state that the act was done willfully, intentionally, with malice, with a deadly or dangerous weapon, or under circumstances which had death ensued would have constituted murder or manslaughter. [State v. Moore, 65 Mo. 606; Jennings v. State, 9 Mo. 862; State v. Bohannon, 21 Mo. 490; State v. Bailey, 21 Mo. 484.]

As to the specific complaint that the indictment is fatally defective in that two separate and distinct felonies are charged in one count, we think that one single offense is charged, for while either maiming, wounding or disfiguring may by itself constitute an offense all of them together in this indictment constitute but the single offense of wounding and disfiguring the prosecutrix. The allegations are not repugnant and the count is not double. As said in State v. Myers, 198 Mo. l. c. 258, "It is well settled in this State that an assault may be charged to have been with different kinds of weapons." Joyce on Indictments, sections 399, 400, 401, says, "Where an offense charged may be committed by two different means, its commission by both means may be charged in one count of an indictment, and proof of either will sustain the allegation. In such a case it is said that proof that any of the means were used proves the offense, and that proof that all the means described were used proves no more, the penalty also being the same." And Bishop, in his Criminal Procedure (4 Ed.), volume 1, sections 434, 438, says, "Some single offenses are of a nature to be committed by many means, or in one or another of several varying ways. Thereupon a count is not double which charges as many means as the pleader chooses, if not repugnant." And such was the ruling of this court in State v. Van Zant, 71 Mo. 541.

Nor do we agree with the learned counsel for the defendant that the punishment testified to by the prosecutrix formed two distinct assaults. In State v. McDonald, 67 Mo. 13, the assault began in a blacksmith shop with a hammer or a pair of tongs and this was interrupted by other parties and after the prosecutor had left the shop the defendant went out and procured an axe-handle and pursued the prosecutor some seventy-five yards from the shop and struck the prosecutor with the axe-handle, breaking his arm below the elbow. Speaking of this assault, Judge HENRY said: "The difficulty in the shop and the final conflict were one and the same transaction, one continuous assault from the beginning, until, with an axe-handle, he shattered Cockrum's arm; and the charge that the assault was made with a hammer and an axe-handle was literally true. It was not charging two assaults to one count, but one continuous assault with several weapons, which was neither impossible nor improbable, as the evidence clearly demonstrates." [Johnston v. State, 7 Mo. 183.] So in this case, we do not think that the assault became two different offenses from the mere lapse of time which intervened between the whipping with the cow-hide and the time taken to go to the kitchen and return with the stove-lid lifter and the continuation thereof immediately upon the return of the defendant from the kitchen. In our opinion it was one continuous assault if the evidence of the prosecutrix is to be believed. Moreover, duplicity in an indictment is a defect which is cured by verdict. The defendant did not demur to the indictment and did not move to quash it nor did she ask the court to require the State to elect upon which one of the offenses alleged therein, if more than one, it would proceed to trial. [State v. Fox, 148 Mo. 517, and cases therein cited; State v. Nagel, 136 Mo. l. c. 49; 1 Bishop, Crim. Proc., sec. 443, and cases cited.]

II. In the first instruction the court instructed the jury that:

"If you believe and find from the evidence, that the defendant Olive M. Nieuhaus, in Perry county, and State of Missouri, within three years next before the 9th day of April, 1907, did willfully and feloniously whip Maggie Shine with a whip by which said Maggie Shine was wounded, or disfigured, then you will find the defendant guilty, as she is charged in the indictment, of wounding, or disfiguring, said Maggie Shine by said whipping, as you, from the evidence, shall believe her to have been so wounded or disfigured. And if you shall believe and find from the evidence, Olive M. Nieuhaus, at said time and place, and upon such whipping, by her, of said Maggie Shine, and in continuance by her of the punishment so inflicted upon said Maggie Shine by said whipping, did willfully and feloniously burn said Maggie Shine with a hot iron stove-lid lifter, by which said Maggie Shine was wounded or disfigured, then you will find the defendant guilty, as she is charged in the indictment, of wounding, or disfiguring said Maggie Shine by said burning, as from the evidence you shall believe and find her to have been so wounded or disfigured.

"If you find the defendant guilty of either wounding or disfiguring said Maggie Shine, by either said whipping or burning, you will fix her punishment therefor at imprisonment in the penitentiary not less than two years nor more than five years, or at imprisonment in the county jail not less than six months, or at both a fine not less than one hundred dollars, and imprisonment in county jail not less than three months, or at a fine of not less than one hundred dollars."

And in the next instruction, the court instructed the jury that:

"If defendant struck Maggie with a whip or burned her with the hot stove-lid lifter, with such severity as to break, cut or burn entirely through the

skin upon her body and to her flesh, then said Maggie was wounded within the meaning of the other instruction and if the lick of the whip or the burns left a scar or scars, then she was disfigured within the meaning of the instructions."

It is insisted the court erred in giving these instructions for the reason that the evidence conclusively showed there was neither felonious wounding nor disfiguring of the prosecutrix.

This court in State v. Leonard, 22 Mo. 449 (1856), defined what would constitute a wounding under the section on which this prosecution is based, in the following words: "As to what constitutes a wounding under this statute, we may suppose from the evidence that the prosecutrix was wounded in the legal sense of the term; for she says that 'there is a scar left still' made by the wound. In Rex v. Payne, 4 Car. & P. 558, it was held, 'if a person strike another with a bludgeon, and break the skin and draw blood, it was a sufficient wounding to be within the statute 9 Geo. IV., ch. 31, sec. 13. Under this act it is not at all material what the instrument is with which the party is wounded. The punishment under the statute of 9 Geo. IV., chap. 31, sec. 12, was in some cases death; a wound from a kick with a shoe on will be within the same statute. [Rex v. Briggs, 1 Moody's Crim. Cas. 318.] In criminal cases, the definition of a wound is an injury to the person by which the skin is broken. [Moriarty v. Brooks, 6 Car. & P. 684; Rex v. Withers, 4 Car. & P. 446.] . . . Dr. Johnson defines a wound to be 'a hurt by violence.' In the case before us, the instrument was a stone about the size of the fist of a woman—for thus the witness described it—and it was thrown with such violence as to knock the woman down; and when she was afterwards examined on the trial as a witness, about a year after she received the blow, she said, 'It bruised me severely; there is a scar there yet.' There

can be no doubt, then, of this being a wound, under the 38th section of the act aforementioned.''

But the contention of the defendant is that there was no evidence that the whip with which the prosecutrix was wounded, or the stove-lid lifter with which the evidence tended to show she was burned, was a deadly or dangerous weapon, and for this reason, the said instructions above noted were erroneous. As already said, this court has uniformly ruled that it was unnecessary to charge that the assault was made with a deadly weapon or with malice aforethought or that the indictment should state that if death had ensued it would have been murder or manslaughter. In this case the pleader has stated with particularity the weapons used and the circumstances, and the court in these instructions left it to the jury to. say whether the wounding and disfiguring was unlawfully and feloniously done. In our opinion the statute does not require that the wounding should have been done with a deadly weapon, nor in this case, where the charge is the wounding and disfiguring, that it should have been charged that the assault was made with intent to kill. And the jury found that the defendant had feloniously wounded and disfigured the prosecutrix by the use of a whip and the hot stove-lid lifter. It goes without saying that had death ensued from these acts of the defendant, the homicide would have been either murder or manslaughter, but it was not necessary for the jury to so say because it was not necessary to allege the same. To hold that the wounding and disfiguring with the instruments alleged and proven in this case is not within the statute, would be to nullify its plain provisions. We think the instructions were not erroneous and this ground of appeal is not tenable.

III. As to the assignment that the evidence did not show any disfiguring of the prosecutrix, we are wholly unable to agree. The word "disfigure" has no

technical meaning and must be considered in its plain and ordinary sense. Thus used it means to mar the figure and to render less perfect or beautiful in appearance. And such was the effect of the burning and lacerating of the flesh of the prosecutrix in this case.

IV. The prosecutrix, after testifying that the defendant had whipped her, was asked, "Did she [meaning the defendant] ever put anything on your sores or do anything relative to your burns?" To which the defendant's counsel objected in these words: "The effect, if any, has nothing to do with this case." The objection was overruled and the defendant excepted. This action of the court is assigned as error. We are unable to see the ground upon which the exception was taken. Certainly the language of the counsel does not indicate any legal ground for excluding it. Of course the offense was committed, if at all, irrespective of what the defendant afterwards did, but we cannot see how this question and answer could have had any material effect upon the verdict of the jury. Certainly it is not sufficient to reverse the judgment.

V. It is next insisted that the court erred in refusing to permit defendant's counsel to cross-examine the prosecutrix as to her habit of lying and as to her being whipped on the occasion complained of for lying. The court permitted the counsel to interrogate the witness fully as to the reason given by the defendant for whipping on the day of the assault, but the counsel desired or offered to prove that previous to that time the prosecutrix had an inveterate habit of lying, and the court ruled that whatever her habit had been before that time, and whatever punishment the defendant had inflicted on her for that habit, had nothing to do with the case before the jury, and we think the court correctly ruled. The defendant herself was a witness on the stand, and testified she had whipped the prosecutrix for lying to her that day about putting coal oil on the stove. She made no pretense of having

inflicted the wounds upon the prosecutrix on account of her previous habit of lying, if such was the case. The claim that the defendant stood in the position of parent to the prosecutrix and therefore had the right to administer to her reasonable discipline, was fully submitted to the jury in the 8th instruction given by the court in these words: "If the jury find from the evidence that the defendant at the time she whipped the prosecutrix, Maggie Shine, with a riding whip, had the charge, custody and control of said Maggie Shine, for the purpose of rearing, training and educating her, and shall further find that the punishment administered with said riding whip was reasonable and moderate, and that such punishment was administered for the purpose of correcting the faults of said Maggie Shine and not to gratify the feelings of malice or revenge, then such whipping was justifiable, and the jury cannot find defendant guilty of any offense under the law for or on account of such whipping."

The defendant testified to the facts upon which this instruction was based and gave her version of the cause for the whipping. The prosecutrix testified that the cause alleged by the defendant at that time was because she had not put away the ironed clothes. The court ruled that the defense would be allowed to ask the prosecutrix what she was whipped for that day, but would not permit proof of what had occurred previous to that time. We think the defendant had the full benefit of her explanation as to the cause for administering the whipping, and the instruction given by the court was as favorable as she had any right to demand.

VI. It is next assigned as error that Mrs. Moranville and Martina Tucker were permitted to testify over the objection of the defendant as to the probable instruments with which the welts and sores on Maggie Shine were inflicted, when neither of them had qualified as experts. Mrs. Moranville in her direct examina-

tion testified that on the 16th of January, five days after the alleged whipping and burning, she examined the body of the prosecutrix and found burns and marks and counted some seven burns on that day. Objection was made at that time that she was not an expert on the question of burns, but this objection is not insisted upon now, nor do we think it would be tenable inasmuch as Mrs. Moranville was a woman of middle age and had a family of four children, and we think it was perfectly competent for her to testify that a wound that she had observed upon the body of the prosecutrix was caused by a burn, as such an opinion would be within the range of common experience and observation. Besides she only testified that they looked like burns to her. She was then asked to state her opinion how these burns were produced, that is, how the instrument which inflicted the burns had been used, and she answered that it looked like whoever had done it had taken an iron point and scraped it on the body. The objection was that she could state how the wounds ranged but could not give her opinion how the instrument was used. Afterwards she stated just how the wounds or burns ranged with reference to each other and gave their dimensions. We think this also was within the range of common experience. Having examined the wounds and their relations to each other, we think that a witness of ordinary intelligence could state that it looked to her as if they had been inflicted by an instrument which was applied in a continuous stroke or application and not in separate and detached wounds or by distinct strokes. On cross-examination she testified that she had often seen burns, the children had been burned by accident and she herself had. She had never made a scientific investigation of burns.

Mrs. Martina Tucker, a married woman of some 48 years, testified that she also made an examination of the prosecutrix on or about the 22nd of January in connection with several other ladies, and that she

found six or seven places that she called burns on Maggie's body and found bruises and welts from a whip or switch, whichever it was. Mrs. Tucker testified that these wounds which she called burns were kind of bound together. When she saw them they had healed, some of them more than others, and just one was an inch and a half or two inches in length and about an inch wide. They had scabs on them. She had seen burns, had been burned herself on the stove or with hot irons. She said that she thought that these burns on Maggie's body looked like the burns that she had seen which had been caused by being burned by a hot iron, that is, she thought they looked like burns to her. The witness gave a full description of the size and appearance of the various burns or wounds that she saw. She also testified that she had burned herself accidentally with carbolic acid and these burns did not look like those she had seen caused by the acid. This is about the substance of the testimony.

Dr. Vessels examined these wounds and fully corroborated all that Mrs. Moranville and Mrs. Tucker had said in regard to them and also testified that a wound made by an acid left a different effect on the body than an ordinary burn and testified further that he did not believe that it was possible to pour liquid on the girl and cause the shape and condition of these scars that he found on her body. Dr. Morton fully corroborated Dr. Vessels and the other witnesses, and gave it as his opinion that these wounds had not been occasioned by scalding or done with an acid or liquid. We think that the testimony of Mrs. Tucker was competent. She had merely given her opinion that the scars were burns as the result of her ordinary observation and experience, and, as we have said in regard to Mrs. Moranville's evidence, we think that her experience and observation were sufficient to entitle her to give her opinion as to what had caused these wounds. Certainly we think there was no reversible

error occasioned by the admission of this testimony, when it was so fully corroborated by the expert evidence of both Doctors Morton and Vessels.

VII. Error is also alleged as to the exclusion of testimony of Emanuel Lash. This witness was called to show the unfriendly feeling existing between Mrs. Moranville and Mrs. Nieuhaus and their respective husbands. And he testified without objection that they were at outs and that the trouble seemed to have arisen in regard to a binder that Mr. Nieuhaus had sold to Mr. Moranville. The objection on the part of the State was that the witness was detailing a trouble between another Moranville and the defendant, and the court excluded it as immaterial. When Mrs. Moranville was on the stand she was asked if she had been on speaking terms with Mrs. Nieuhaus for about five or six months and she answered, "No, sir, not since this trouble commenced," and she stated that prior to that time she and Mrs. Nieuhaus exchanged visits; that Mrs. Nieuhaus had been to her home twice since Moranville had moved out of Mr. Nieuhaus's property. She admitted that she had signed an affidavit charging Mrs. Nieuhaus with this assault, but that the prosecution was begun in another court and nothing came of the proceedings commenced by her. The defendant testified that she and Mrs. Moranville had not been on speaking terms for a year since last August; that in August, the year before, the defendant's mother visited her, and as Mrs. Moranville was some way related to her mother the defendant went with her mother to visit Mrs. Moranville, but that the latter never spoke to her during the visit, and that there was an ill-feeling between them for six months before the trouble came up. Taking into consideration that the witness Lash was permitted to state that the defendant and Mrs. Moranville were "at outs" and to detail the cause of the trouble

between their husbands and that Mrs. Moranville had admitted that they were not on speaking terms and had not been since this trouble came up, and that the defendant had corroborated that statement as to the ill-feeling existing between them, we think it is perfectly apparent that the ill-feeling between these parties was made apparent to the jury, and whatever effect it could have upon the fairness and truthfulness of Mrs. Moranville's testimony was secured to the defendant by the testimony. While it is true, as defendant insists, that it is perfectly competent to show the motive and animosity of an adverse witness in order that the jury may know what credit to give the statement of such a witness, yet when this animosity was so fully shown as it was in this case, it is clear to our minds that the ruling of the court did not deprive the defendant of the benefit of that principle of law and does not offer any substantial ground for the reversal of the judgment in this case.

VIII. Finally, it is insisted that the court erred in failing and refusing to instruct the jury upon a common assault. The defendant requested an instruction to this effect, which the court refused. It is to be noted in the first place that the indictment in this case is for felonious wounding and disfiguring and is not an indictment for an assault with intent to kill, either with or without malice aforethought. While there are numerous cases which hold that where the evidence is doubtful as to the grade of the assault, it is proper for the court to instruct for simple assault and battery and the jury may so find, but it is also equally well settled in this State that where the evidence on behalf of the State if true establishes a felonious assault, the court should not give an instruction for common assault. [State v. Barton, 142 Mo. l. c. 455, 456; State v. Duncan, 142 Mo. l. c. 461, 462; State v. Higgerson, 157 Mo. l. c. 402; State v. Musick, 101 Mo. l. c. 270.]

If the jury in this case had believed the defendant's testimony under the instruction of the court, she was entitled to go acquit of any offense, but if, as they evidently did, they believed the evidence on behalf of the State, it was a felonious wounding and disfiguring of the prosecutrix, and the court properly refused to instruct upon common assault.

We have thus endeavored to carefully consider every proposition advanced on behalf of the defendant and have reached the conclusion that there is no reversible error in the record, and that the judgment should be and it is therefore affirmed. All of this division concur.