The State v. Elmer Simmons, Appellant.—58 S. W. (2d) 302.

Division Two, March 3, 1933.

248

*Bradley & Bradley* for appellant.

*Stratton Shartel*, Attorney-General, for respondent; *Sidney C. Roach* of counsel.

250

WESTHUES, C.—In the Circuit Court of Dunklin County, Missouri, appellant was convicted of murder in the second degree. His punishment was assessed at forty years' imprisonment in the State penitentiary. A motion for a new trial was timely filed and overruled. Thereafter defendant was sentenced and from this sentence an appeal was taken.

Appellant was charged with murder in the first degree. The evidence adduced reveals the following: Appellant and deceased,

Edgar Connor, *alias* Ted Cross, lived in Kennett, Dunklin County, Missouri. A short time prior to the fatal shooting the father of appellant had been robbed. Deceased was charged with this crime. At a preliminary hearing he was bound over to the circuit court for trial. The evidence reveals that deceased made a number of threats to the effect that if the case against him was not dismissed appellant and his father, Charles Simmons, would not be there to appear against him in the circuit court. On Thursday, June 4, 1931, prior to the homicide on June 6, appellant was at the home of deceased and had a conversation with him concerning the charge of robbery. Appellant invited deceased to visit him at his home. On Saturday morning, June 6, Ted Cross went to the home of appellant and they and others soon engaged in a game commonly known as "crap shooting." Ted Cross, the deceased, won all of the money, amounting to about four dollars, and a billfold belonging to appellant. The evidence does not disclose any quarrel or ill feeling as a result of this gambling. All the parties present had partaken of home-brew of which there seemed to be no shortage. When the game broke up appellant and a witness named Boswell left the house for a few minutes leaving Ted Cross, appellant's wife, and two small children in the home. Thus far there is little dispute in the evidence. What occurred on appellant's return, according to his testimony, is that his wife informed him that Ted Cross had insulted her. Thereupon appellant obtained a revolver, which was in one of the rooms, placed it in his pocket and went to the room where Ted Cross was and asked him what he meant by insulting his wife. Deceased responded by picking up a beer bottle and with an oath declared that he was going to finish appellant then and there and proceeded towards appellant as if to strike him upon the head with the bottle. Appellant fearing that his life was in danger drew his revolver and shot deceased. The bullet entered deceased's chest, severed a large artery and resulted in death within a few minutes. The State's evidence tends to prove that when appellant returned he immediately went to where deceased was and without a word of warning shot deceased.

Mrs. Florence French, who testified that she lived "catty wampus" across the street from appellant, also testified that she heard no commotion or talking before the shooting but immediately after the shot was fired she heard a voice call out, "O My God!"

A witness for appellant, who had casually called to get a bottle of beer, testified that he entered the back room without knocking; that he saw no one except Ted Cross and appellant's wife standing in a doorway between two rooms; that Cross was arguing with appellant's wife. The witness passed by them and went to the front room and there met appellant coming in the front door. The witness further testified that appellant's wife immediately said something to

appellant and thereupon appellant exclaimed: ''I will wade in blood up to my neck for my wife.'' The witness fearing immediate trouble departed hurriedly and saw no more, but heard a shot fired.

Appellant's motion for a new trial contains thirty-one assignments of error. They pertain to the sufficiency of the evidence, the information, admission and rejection of evidence and instructions.

We deem the evidence ample to sustain the verdict. Appellant admitted having fired the shot that killed deceased, pleading self-defense as a justification therefor. Appellant was corroborated in his evidence in support of his plea. The State, as the statement of facts reveals, introduced evidence, which if believed by the jury, was sufficient to convict defendant. The testimony for defendant, of the witness who casually called at the home, is somewhat inconsistent with defendant's plea of self-defense. Most of the witnesses, both for the State and the appellant, and also appellant and deceased were successfully impeached as to their reputation for morality and truth and veracity by character witnesses and by evidence of former convictions of various crimes. The home of defendant, according to the evidence, was a loitering place for persons of ill repute. Gambling and excessive drinking were permitted and beer was sold freely.

■ It is not the duty of this court to pass upon the weight of the evidence or the credibility of the witnesses. That is within the province of the jury. Where there is substantial evidence in the record to sustain the finding of the jury, that finding is binding upon us.

■ The appellant also complains that the punishment was excessive. The Legislature has fixed the punishment for murder in the second degree at not less than ten years' imprisonment in the penitentiary. We cannot say, as a matter of law, that the punishment was excessive. The deceased may have been a bad man. His reputation certainly was not good. Appellant's reputation, however, according to the evidence, was no better. To permit conduct in or about the home as appellant permitted in this case will result in serious trouble as certain if not as timely as night follows day. When, under such circumstances, a jury assesses a heavy penalty a court is not justified, because of the penalty assessed, to say that the verdict was the result of passion or prejudice against the defendant.

■ Appellant challenges the sufficiency of the information, asserting it did not charge the time or the county and state of the alleged murder. This contention is without merit. In the forepart of the information we read: ''That on or about the sixth day of June, A. D. 1931, in the County of Dunklin, in the State of Missouri.'' This is sufficient to fix the date and the venue. The venue need not be repeated in the latter part of the information.

■ Appellant also asserts that the information is not properly

verified by the prosecuting attorney. The verification is in due form with the exception that the name of James V. Billings appears in the body of the affidavit. Whereas, the name of Elbert L. Ford is signed to the information and also to the affidavit. This appears upon its face to be a clerical error. The information begins with the following statement:

"Elbert L. Ford, Prosecuting Attorney within and for the County of Dunklin, in the State of Missouri, upon his oath of office as such Prosecuting Attorney, and upon his hereto appended oath and upon his knowledge, information and belief informs the Court and charges—"

The cases cited by appellant, for example State v. Privitt, 327 Mo. 1194, 39 S. W. (2d) 755 and State v. Brown, 304 Mo. 78, 262 S. W. 710, are dissimilar on the facts and are not authority for appellant's position. That the prosecuting attorney, Elbert L. Ford, made the oath appended to the information is too plain for argument. The clerical error did not in any way affect the rights of appellant.

■ Appellant also contends that the information is not based upon the oath of the prosecuting attorney. The information expressly so states. This allegation need not be repeated in the information. [State v. Lee, 303 Mo. 246, 259 S. W. 798.]

■ In assignments number six to sixteen, inclusive, appellant complains of rulings of the trial court with regard to admission and rejection of evidence. We have carefully examined them and find that much of the testimony complained of was admitted without any objection whatever being made by appellant. It needs no citation of authorities that under such circumstances appellant is in no position to complain. The testimony objected to with reference to appellant's visit at the home of deceased a few days prior to the homicide, when appellant is alleged to have extended an invitation to deceased to visit appellant, was proper to show the feeling between the parties. Under appellant's theory of the case, any evidence which would shed light upon the feeling between the Simmons family and deceased was proper. Appellant introduced much testimony tending to prove that the deceased had threatened the life of appellant and his father.

■ Complaint is made because the trial court refused to permit a witness to answer the following question: "Was Edgar Boswell so drunk that he could not stand up or talk coherently?" Boswell was a material witness for the State. He testified in substance that appellant shot deceased without provocation or warning. All of the witnesses who testified on the subject stated that Boswell had been drinking. The trial court ruled that it would permit the witness to relate in detail as to the actions and conduct of Boswell. Appellant was not harmed by this ruling. The answer to the question could at

most have been only a conclusion of the witness. Appellant introduced evidence tending to prove that Boswell left the room and was not present when the shot was fired. This was inconsistent with the theory that Boswell was unable to stand up because of intoxication.

A witness named Jeffords testified for the State. A hostile feeling was shown to exist between the Simmons family and Jeffords. A witness was asked to state why Jeffords had such a feeling against appellant. Error is assigned to the trial court's action in sustaining an objection to this question. Jeffords, while on the witness stand, freely admitted being hostile to the Simmons family. He admitted that a few days after the robbery charge was filed against Cross, the witness attempted to buy whisky from appellant's father for the purpose of having him prosecuted. He also testified that he went to the home of the elder Simmons and cursed and threatened him because of the robbery charge. The hostility of Jeffords to appellant and the reason therefor was apparent. When the hostility of a witness to a party interested in the trial is proven and not denied and the reason of the hostility is clearly shown it is not prejudicial error to refuse a witness to state why the hostility existed.

There is no merit in appellant's contention that the court permitted improper cross-examination of appellant and the wife of appellant. Appellant and his wife, while on the witness stand, related the circumstances of the shooting of deceased by appellant. Having so testified the cross-examination was proper even though it was more in detail than the examination in chief. [State v. Wilson, 321 Mo. 564, 12 S. W. (2d) l. c. 446 (2).]

In the motion for a new trial complaint is made of a number of instructions. The instructions given on the credibility of witnesses contained the statement that the jury *may* take into consideration the interests of the witnesses, etc. Appellant contends that the word *must* should have been used. It was pointed out in State v. Tobie, 42 S. W. l. c. 1079-1080, 141 Mo. 547, that to so instruct was not reversible error; that there was no substantial difference in the language used and that contended for.

It is also contended that the court erred in its instructions because the words "wilfully, premeditatedly, feloniously, malice and malice aforethought" are defined in the instruction submitting murder in the second degree, when the words referred to were also defined in the instruction on murder in the first degree; that the repetition of these definitions unduly emphasized their significance. It is a better practice not to have repetitions in the instructions. These definitions, however, were necessary to the instruction on murder in the second degree and if not set out *verbatim* in the instruction reference thereto would have been necessary. It was more convenient for the jury to have the words defined in each instruction. Appel-

lant certainly was not prejudiced thereby. [State v. Murray, 193 S. W. 830.]

█ Complaint is made with reference to the instruction on manslaughter. This instruction told the jury that if defendant intentionally shot deceased while in the heat of passion, caused by an insult to the *wife .defendant* without malice, etc. The point is made that there was no *wife defendant,* and therefore the instruction was misleading. It is evident that in the instruction the words *of the* were omitted between the words "wife" and "defendant." There was but one defendant in the case. Appellant's evidence tended to prove that deceased had insulted his wife and this was the immediate cause of the shooting. The jury could not have been misled by the wording of the instruction. Its meaning was plain and in view of the evidence could not have been misunderstood. Other points are raised by the motion for a new trial, but upon examination we find them without merit and not of sufficient importance to deserve consideration. We may add that a number of the points discussed herein are of minor importance.

The information is sufficient in both form and substance. The verdict is in proper form. The record discloses that appellant entered a plea of not guilty. A jury was duly impaneled and sworn. Allocution and sentence followed the overruling of the motion for a new trial. No reversible error appearing, the judgment is affirmed. *Cooley* and *Fitzsimmons, CC.,* concur.

PER CURIAM:—The foregoing opinion by WESTHUES, C., is adopted as the opinion of the court. *Ellison, P. J.,* and *Tipton, J.,* concur; *Leedy, J.,* not sitting.