STATE v. KENNETH RIZOR, Appellant.—No. 39022.—182 S. W. (2d) 525.

Division Two, October 9, 1944.

*Silvers & Silvers* for appellant.

*Roy McKittrick*, Attorney General, and *Covell R. Hewitt*, Assistant Attorney General, for respondent.

██ ELLISON, J.—The appellant was convicted by a jury of murder in the second degree in the circuit court of Barton county on change of venue from Vernon county for striking and killing Earl Bliss. His punishment was assessed at 30 years imprisonment in the penitentiary. Four assignments of error are made in his brief. We take these up in order.

██ The first assignment contends the prosecuting attorney's information was fatally defective in charging duplicitously and repugnantly that appellant killed the deceased: either with his hands, or with his fists, or with a blunt instrument; or else with the blunt instrument alone. Actually, this charge was made in the conjunctive, not the disjunctive, the information alleging the appellant assaulted, struck, beat and mortally wounded the deceased upon the head and body with his "fists and hands and a certain blunt instrument, a further description of said blunt instrument is to this affiant unknown, had and held in his hands."

It was an amended information filed on the day of the trial, and the appellant went to trial without objection then or thereafter in the trial court. This latter being true, it is too late now to challenge the information unless it lacks some averment essential to the description of the crime. State v. Biven (Mo. Div. 2), 151 S. W. (2d) 1114, 1118(10). But it is not an essential element of murder in either degree that the killing be done with a deadly weapon, or any weapon at all: the crime may be committed with the fist. State v. Beard, 334 Mo. 909, 912(1), 68 S. W. (2d) 698, ██ 700(1). And the information cannot be attacked after verdict for indefiniteness in the description of the way the crime was committed. State v. Dildine, 330 Mo. 756, 759(3), 51 S. W. (2d) 1, 2(3).

██ But further on this point. The first of the two cases cited thereon in appellant's brief is State v. Jones, 20 Mo. 58, 61. In that case the indictment charged that the defendant "did strike and thrust" the deceased "in and upon the left side of the belly, and also in and upon the right shoulder, giving to the deceased, then and there, in and upon the left side of the belly, and also in and upon the right shoulder, *one* mortal wound, of the breadth of three inches, and of the depth of six inches, of which mortal wound he then and

there instantly died.'' The opinion said the words used in describing the offense were not sensible or grammatical. But the point emphasized was that the indictment charged the giving of mortal wounds *both* on the left side of the belly and on the right shoulder; and yet said there was only *one* wound. Then the opinion asked, where was that wound, which place the wound was inflicted?

The decision was bottomed on common law rules of pleading. It was decided in 1854 before the present Sec. 3952, R. S. 1939, Mo. R. S. A. sec. 3952 had been amended in 1855 by the addition to its fourth clause of the part next quoted: that no indictment shall be deemed invalid ''for any surplusage or repugnant allegation, when there is sufficient matter alleged to indicate the crime and person charged;'' . . . provided, that nothing herein shall be so construed as to render valid any indictment which does not fully inform the defendant of the offense of which he stands charged. This fact was noted in State v. Edmundson, 64 Mo. 398, 401, decided in 1877, and that decision limited the doctrine of the Jones case far enough to make it conform to the new statute. See, more recently, State v. Kenyon, 343 Mo. 1168, 1179(5), 126 S. W. (2d) 245, 251(8).

The other case cited by appellant is State v. Reakey, 62 Mo. 40, 42. It was decided in 1876, after Sec. 3952 had been amended as just stated. But the opinion did not mention it. The indictment there alleged the defendant killed his wife ''with a stick or cudgel of some kind, unknown to the (grand) jurors, and with his opened right hand, the same being deadly weapons, which the defendant then and there held in his hand or hands.'' Thereafter the indictment alleged the defendant struck the deceased with said stick or cudgel of a kind unknown to the grand jurors on the right side of the forehead; and choked her throat with his right hand. The opinion severely criticized the indictment for being illogically and inartifically drawn, pointing out it alleged in effect that he held ''his opened right hand in his right hand''; and further said the allegation as to the choking of the deceased's throat should have been in a separate count, and that it was not alleged that act was committed wilfully, deliberately and premeditatedly.

The Reakey decision further held ''A clear substantive charge, constituting the offense, is as necessary now as it ever was.'' Within reason that is true. But it has been held many times since that an indictment or information may charge a murder was committed by different means or weapons, and be sustained by proof of either.[1] In

---

[1]30 C. J., sec. 289, p. 102; 40 C. J. S., sec. 150, p. 1041-2; 26 Am. Jur., sec. 266, p. 339; 27 Am. Jur., sec. 66, p. 629; State v. McDonald, 67 Mo. 13, 17; State v. Blan, 69 Mo. 317, 319; State v. Hottman, 196 Mo. 110, 112, 94 S. W. 239, 249(1); State v. Myers, 198 Mo. 225, 232, 258(7), 94 S. W. 242, 244, 253(7); State v. Nieuhaus, 217 Mo. 332, 344, 117 S. W. 73, 77(1); State v. Webb, 266 Mo. 672, 681(II), 182 S. W. 975, 976(5); State v. Mosley (Mo., Div. 2), 22 S. W. (2d) 784, 786(8).

view of these decisions we hold the information here was not fatally defective in charging that the murder was committed with appellant's fists and hands and a blunt instrument of a description unknown to the prosecutor. Whichever of these were used, it was all a part of the same fatal assault. That is the thought underlying the authorities. We are not deciding how far the rule extends, but are merely applying it to the facts here; which will presently be stated more fully.

Neither can we agree, as contended in appellant's second and third assignments, that the information *amounted* to a charge that the murder was committed with an unknown blunt instrument; and that consequently the charge must fail if the evidence did not show the death was caused in that manner, but rather indicated it resulted from blows with the fists. So far as the information is concerned, a conviction of      the crime could be based on evidence that the death was caused in any one of the three ways alleged. On that point appellant cites State v. Reed, 154 Mo. 122, 133, 55 S. W. 278, 282(6). We are unable to find the case has ever been referred to since on the same question. The indictment there charged the homicide had been committed by a direct blow with an iron pick. But part of the witnesses testified that just prior to that, in the same altercation, the defendant had struck the deceased with his fist, causing him to fall and strike his head on the sidewalk, resulting in death. The decision held this last mentioned version of the killing did not come within the indictment, citing several English cases. Without considering whether that ruling was correct, we need only say the indictment in the Reed case did not charge the killing was done with the defendant's hands and the iron pick, but only with the pick.

But appellant's third assignment goes further. It maintains that there was no substantial evidence showing the death was caused by appellant's use of a blunt instrument, and therefore it was error for the State's instruction No. 6 to authorize a conviction on that theory—even conceding such evidence would have been admissible under the information. The instruction did authorize a conviction on proof beyond a reasonable doubt of a fatal wounding of deceased by appellant "with his fists and hands or a certain blunt instrument." We agree with appellant's thesis. It permitted a conviction on proof of a killing with appellant's fists and hands alone, or with a blunt instrument alone. And if there were no proof of the latter, a conviction on that ground would be unsupported by substantial evidence.

The decision cited by appellant is State v. Lloyd, 337 Mo. 990, 996(2), 87 S. W. (2d) 418, 422(7). The information there charged (as shown in the original record on file in this court) that the defendant made a fatal assault upon the deceased "in some way, and manner, and by some means, instruments, and weapons to your informant unknown." The State's main instruction authorized a

conviction on the theory that the homcide was committed with a dangerous weapon, designating it as "a dangerous weapon, to-wit, unknown." It did not mention fists, or any specific instrument. Appellant contended there was no evidence that a dangerous weapon had been used. The corpse had a bruised and lacerated wound over the left eye. A physician testified he hardly believed a fist would have caused it; but that it might have resulted from falling against something or from the heel of a shoe. The eyewitnesses to the encounter all said it was a fist fight during which the deceased fell against an automobile. They did not see any weapon, and the defendant denied using one. The doctor did not say the wound was inflicted by a weapon, or deny it was caused from falling against the automobile. The decision said, "We think the use of a dangerous weapon by appellant should rest upon more substantial evidence." This undoubtedly was correct unless a fist can be classed as a weapon; and we are unable to find that it has ever been so defined.

Here, there might be more reason for considering a fist an unknown "blunt instrument," but the instruction did not treat it as such, for it specified fists and hands *or* a blunt instrument. So we scan the record for evidence whether the homicide was committed with a blunt instrument. The testimony for the State showed that the deceased was sitting on a stool about 30 inches high in a junk shop with his arms shielding his face; and that the appellant seized his collar with one hand and struck him with the other hand and fist in the face four or five times, the last time knocking him backwards to the floor. He died soon afterwards. The appellant admitted hitting him once on the body and once under the chin, but denied using any weapon or other instrument. Appellant was a large man weighing about 235 pounds. The deceased was taller and thinner, weighing about 175 pounds. A physician who examined the corpse about thirty minutes after the death found a triangular lacerated wound of about $\frac{3}{4}$ inch on each of its three sides over the right eyebrow, and a bruise over the left eyebrow. There was blood on the face. There were scratches on the edge of the breast bone, another on the right arm and finger prints near the elbow of the left arm.

While no one saw any weapon or object in the appellant's hand, yet the examining physician said a post mortem examination showed the cause of death was cerebral hemorrhage due to a series of blows on the head; and that the wounds on the forehead could have been caused by some type of blunt instrument. There was bad feeling between the two men. The appellant claimed self-defense, saying the deceased struck at him with a knife as he passed the stool. It was also shown the deceased had threatened him before that. On the other hand the State's evidence was that appellant had threatened to kill the deceased, a few hours earlier on the same day and also four days previously; and had further participated in a grievous assault on him some fifteen months before.

It is evident that the cause of the death was the blows struck, but that the exact means employed was unknown. There was some reason for thinking a fist alone would not have produced the laceration on the forehead. The physician's testimony that the wound could have been caused by a blunt instrument was competent. 30 C. J., sec. 447, p. 217; sec. 448, pp. 218, 219. It is permissible to reason deductively from the wound back to the instrument employed, although no witness saw it. State v. Bowles, 146 Mo. 6, 13, 47 S. W. 892, 893(1), 69 Am. St. Rep. 598. The prosecutor is not required to possess occult powers, and to commit himself to the exact means employed in producing death, when it is unknown or uncertain. The appellant may have used both his fists and a blunt instrument, or either. We think the instruction hypothesizing both these methods was warranted, and overrule the assignment.

The final contention is that the verdict is excessive. Appellant was forty years old at the time, October, 1942, and his counsel say the punishment of 30 years imprisonment in the penitentiary is equivalent to a life sentence. The punishment for second degree murder authorized by statute ranges from life imprisonment to ten years. Sec's 4378, 4850. It is urged we have power to "rectify" the judgment by reducing the sentence, citing State v. Johnson (Mo., Div. 2), 192 S. W. 441, 442(9), where the circuit court reduced a sentence of 20 years to ten years. In a reply brief appellant further points to five cases where the punishment was either 10 or 15 years. But in State v. Simmons, 332 Mo. 247, 252(2), 58 S. W. (2d) 302, 303, it was 40 years. That decision held we could not say as a matter of law that the punishment was excessive, but both that case and the Johnson case cited by appellant impliedly conceded the facts of each cause have a bearing on the proper amount of punishment to be inflicted.

The learned Assistant Attorney General cites several decisions exemplified by State v. McGee, 336 Mo. 1082, 1101(10), 83 S. W. (2d) 98, 109(41), and based originally on State v. Alexander, 315 Mo. 199, 202(4), 285 S. W. 984, 985(4), most of which were decided during the days of Federal prohibition. These cases say the fixing of punishment for crime is a *legislative* and not a judicial function; and that when the punishment has been assessed within the limits set by statute, *it cannot be adjudged* excessive. True, it is a legislative function to fix the *limits* of punishment, when not cruel and unusual in violation of Sec. 25, Art. II of the State Constitution. But primarily it is the function of the *jury* to assess the punishment within those limits. Usually the statute allows considerable latitude, for the obvious purpose of making the punishment fit the particular crime . And ever since R. S. 1835, sec. 7, p. 493, it has been provided by what is now Sec. 4096, that the trial court shall have power to reduce the extent or duration of the punishment assessed by the jury if the same is deemed to be greater than ought to have been inflicted in the

circumstances of the case. That relief generally is sought in the motion for new trial. It cannot be asked sooner. And we have often treated it as a cognizable question on appeal if there was evidence of passion and prejudice—as was done in the McGee case, supra, where we said there was no such evidence.

But the circuit court has a far better opportunity to pass on all the facts, having seen and heard the parties and witnesses and knowing the trial atmosphere. The situation is about the same as when the trial court grants or refuses a motion for new trial on the weight of the evidence. Appellant's motion for new trial in this case charged the verdict was excessive, and the lower court overruled it. The State's evidence showed a brutal and vindictive killing of the deceased while he was sitting on a stool and trying to shield his face with his arms, by the appellant, who was a large, powerful man. There do not appear to be any credible extenuating circumstances. At any rate the trial court so found.

Finding no error, the judgment and sentence are affirmed. All concur.