THE STATE v. RALPH GABRIEL, Plaintiff in Error.—116 S. W. (2d) 75.

Division Two, May 3, 1938.

520

*Lillie Knight* for plaintiff in error.

*Roy McKittrick,* Attorney General, and *W. J. Burke,* Assistant Attorney General, for respondent.

COOLEY, C.—This case comes here on writ of error from the Circuit Court of Pettis County. For convenience we shall refer to defendant in error as plaintiff, or the State, and to plaintiff in error as defendant, as they were styled below.

Defendant, Gabriel, was charged with robbery in the first degree. The information also alleged two prior convictions of felony, service of the prior sentences imposed and discharge from those sentences, under what is called the Habitual Criminal Act, Section 4461, Revised Statutes 1929 (Mo. Stat. Ann., p. 3063). At the trial the former convictions, incarcerations and discharges were admitted, so that if defendant was rightly convicted of the robbery charged herein the punishment assessed, which was life imprisonment, was proper.

The State's evidence tended to show that on December 12, 1936, at Sedalia, Missouri, George Walz, the complaining witness, was assaulted by defendant and forcibly robbed of about $5 in money and a pocketbook or purse of small, but some, value. Walz testified that he and his wife had come to Sedalia that afternoon in an automobile and that, after parking his car he had gone to a saloon where he met defendant, whom he had not previously known. According to his testimony he was in and out of the saloon two or three times during the day and had altogether two or three drinks of whiskey. He left the saloon the last time about two-thirty P. M., went to where his car was parked and tried to start it, but could not. Defendant came by and tried to crank the car but could not get it started. Walz then sent for some friends to help get his car started and at some time during these proceedings went to a store and made some

purchases. He testified that as he was returning to his car defendant stepped out of an alley and asked him for a drink of whiskey; that he replied that he had none; that defendant then asked him, "Well, you have got a pocketbook, haven't you?" to which he replied, "Yes, a little old purse but it's empty;" that he was walking along during this conversation with defendant beside him; that when he told defendant he had a purse but it was empty defendant struck him on the temple with some instrument, which he did not see and could not describe, knocking him down and momentarily rendering him unconscious; that he "came to" and found defendant "astraddle" of him, trying to get his pocketbook "and I was fighting both hands away from my pocketbook." Defendant got the pocketbook, which Walz testified contained about $5 in money. Walz said that he again lapsed into unconsciousness or semi-consciousness and when he "got to himself" he was at his car. By other witnesses it was shown that his head was then bleeding and he complained of having been slugged and robbed. He testified that he recognized defendant at the time of the robbery and identified defendant at the trial as his assailant.

It appears further from Walz's testimony that he had observed defendant and one Tom Craig together a good deal that day, and that after fully regaining consciousness and complaining of having been robbed he went back to the saloon where he had first met defendant, finding Craig there, and forcibly took Craig to the police station, where, it appears, he signed an affidavit or complaint charging Craig with having robbed him. His explanation of this action was that, having seen Craig and defendant together he thought Craig would be able to help identify defendant to the officers and help locate him, defendant not then having been apprehended, and that he signed the complaint against Craig because it was explained to him that "these two boys were working together and that either could be charged with the robbery;" that the police prepared the affidavit and he signed it. Craig was later tried and acquitted.

Defendant, testifying for himself, denied the robbery. He said that after trying unsuccessfully to help Walz start his car, at about two-thirty P. M., he went back to the saloon and remained there till about four or four-thirty P. M. (It appears from the State's evidence that the robbery occurred before four or four-thirty P. M., though the time is not definitely shown, except that it seems to have been before dark.) Craig, a witness for defendant, testified that he was with defendant most of the time that afternoon till about three-thirty P. M. His testimony can hardly be considered as tending to show an alibi.

Defendant contends that his demurrer to the evidence should have been sustained. This contention seems to be based first upon the hypothesis that Walz was so drunk at the time of the alleged robbery as not to be conscious of what happened and was therefore in-

competent at the trial to give testimony upon which a conviction may rest. This contention is untenable. Walz's testimony was that he had had some two or three drinks of whiskey during the day, but it does not show that he was drunk. Several witnesses saw him when he got to his car, with bleeding head, very soon after the robbery. None of them gave any testimony tending to show that he exhibited symptoms of intoxication. The only evidence in the record that Walz had been drinking, other than his own testimony, was the testimony of defendant's witness, Craig, who said that Walz, when he left the saloon (before the robbery) was "pretty drunk." He did not see Walz take any drinks but said, "You could tell he had several drinks the way he talked," and that he was "staggering." The jury may or may not have believed that testimony, a question for the jury to decide, not for the court on demurrer to the evidence. Moreover, if believed, it fell far short of showing, as matter of law, that defendant was in such condition as not to be able to realize and later to recount what had occurred. It does not appear how long this was before the robbery. It does not appear what effect the lapse of time and a walk in the open air may have had in clearing Walz's mental faculties, if they were befuddled, as defendant seems to argue, when he left the saloon. As we have indicated, there was no evidence that he was drunk at the time of the robbery.

It is further argued that the evidence does not support the charge in the information in that the information charges robbery by means of a deadly and dangerous weapon and the proof does not show the use of such weapon. The court did not submit to the jury to find, nor did the jury find, the defendant guilty of robbery by means of a dangerous and deadly weapon. On the contrary the court instructed the jury, and correctly under the evidence, that "there is no evidence that the defendant used a dangerous or deadly weapon in the commission of the offense charged, if he did so commit such offense."

Robbery in the first degree is defined by Section 4058, Revised Statutes 1929 (Mo. Stat. Ann., p. 2856), as (*inter alia*) the felonious taking of property from the person of the owner against his will by violence, etc. The information in this case fully charges and the proof shows the facts necessary to constitute robbery in the first degree under that section. But it charges more, viz., that the robbery was committed by means of a dangerous and deadly weapon "the exact nature and description of which is unknown to the prosecuting attorney." Section 4061, Revised Statutes 1929 (Mo. Stat. Ann., p. 2863), which seems to be invoked by defendant as sustaining his contention that the verdict is not in accordance with the charge in the information, merely provides an increased penalty if the robbery charged has been committed "by means of a dangerous and deadly weapon." It does not change or purport to change the *defi-*

*nition* or constituent elements of robbery in the first degree as defined in Section 4058. That robbery in the first degree, *without* the use of a deadly weapon, is necessarily *included* in a charge of robbery by means of such weapon (the statutory elements of first degree robbery defined by Section 4058 being alleged, as in the instant case), we think there can be no doubt. As we have indicated, said Section 4061 does not purport to create or define the offense. It merely increases the punishment for the offense defined in Section 4058, when committed by means of a dangerous and deadly weapon.

By way of illustration, we have many times held that a charge of murder in the second degree or of manslaughter is included in a charge of murder in the first degree and that under an indictment charging first degree murder a conviction of second degree murder or manslaughter may be sustained. On like principle a charge of robbery in the first degree by means of a dangerous and deadly weapon includes, and is sufficient to sustain conviction of, robbery in the first degree and punishment accordingly, as though the use of a deadly weapon had not been charged.

Defendant further contends that a verdict in his favor should have been directed because the information charged that Walz was robbed of $5 "lawful money of the United States" and there was no proof that the money taken was "lawful money of the United States." The evidence showed the taking of about $5 in "money," contained in the purse, without further description of said "money." The contention seems to be that because the evidence failed to show affirmatively that the money taken was "layful money of the United States" there was a failure of proof of the charge made; that even if the information need not have charged the kind of money taken yet, since it did so, the charge had to be proved as made. Defendant cites two cases in support of this contention, State v. Smith, 31 Mo. 120, and Taylor v. State, 130 Ind. 66. State v. Smith, supra, was a prosecution for forgery wherein the alleged forged instrument was set out in the indictment. The proof tended to show the forgery of an instrument differing somewhat from the instrument charged to have been forged. The court held that while the pleader need not have described the alleged forged instrument so minutely yet, having done so and having professed to set out the instrument according to its tenor, he was held to strict proof; that "where the matter of a written instrument is introduced in the pleading, so as to imply that a correct recital is intended, very slight discrepancies between the instrument set out and that produced in evidence are fatal. . . especially when the variance relates to an allegation descriptive of that which is material, as was the middle name or the initial letter of the middle name of the officer of the bank." We do not regard that case as in point here. The term "money," as used in common parlance, is so generally understood to mean lawful money of the United

States that we think it might well be assumed that such meaning was intended, absent, as here, any qualifying circumstances. At least we may safely take judicial notice that "money," as the term is commonly—we might say universally—used and understood is something which has some value. In a robbery prosecution it is not necessary to prove the exact value of the property taken, if it appears that it had some value. In this case the value of the purse alone, though slight, would be sufficient, so far as concerns the question of value. Furthermore, as to variance between pleading and proof, we have a statute, Section 3562, Revised Statutes 1929 (Mo. Stat. Ann., p. 3158), which provides that no such variance in (among other things) "the name or description of any matter or thing whatsoever therein (in the indictment or information) named or described" shall be ground for acquittal unless the trial court shall find "that such variance is material to the merits of the case and prejudical to the defense of the defendant." In this case the trial court did not so find. The question we are now discussing was not called to the court's attention. Said statute would not excuse a total failure of proof of the crime charged (State v. Bowman (Mo.), 247 S. W. 143), but in this case we think there was no such failure. The Indiana case cited is authority against rather than for the defendant. We rule this point against the defendant.

■ Point is made that the court erred in permitting Dr. Snavely, a witness for the State, who had treated Walz for the wound on his head, to testify that said wound looked like it had been caused by some blunt instrument. This testimony went in without objection and error cannot now, on appeal, be predicated upon it.

■ It is urged that the court should have discharged the jury and declared a mistrial because of alleged prejudicial remarks of the prosecuting attorney in his closing argument to the jury. On this proposition we have before us only this short excerpt of the argument and the court's rulings, appearing in the bill of exceptions:

"Mr. Harned, Prosecuting Attorney, among other things said: '. . . gentlemen, don't you know that every thug, cutthroat and every criminal that carries on the business this man is doing, picks that kind of a man.'

"Mr. McCloskey: Just a minute, if the Court please. We object to the reference of the defendant as being a cutthroat and a criminal and ask that the jury be discharged.

"The Court: You are right about that—

"Mr. Harned: (Interrupting) I withdraw that statement, Your Honor, I shouldn't have made it.

"The Court: The Prosecuting Attorney has no right to call the defendant a criminal. Strike it out.

"To which action and ruling of the court, in failing to discharge the jury, the defendant, by his counsel, then and there duly excepted at the time and still excepts."

We are again confronted with the oft-recurring contention that counsel, in their zeal and enthusiasm, have transgressed the limits of legitimate argument to the jury, an offense against which we have often inveighed and for which we have sometimes felt compelled to reverse judgments. In the instant case the remark complained of, referring—at least indirectly—to defendant as a criminal, doubtless should not have been made. True, defendant, by his own admission, was in fact a criminal, having been twice before convicted of felony. But, legally, such fact went only to the measure of his punishment if found guilty of the offense for which he was then on trial. It could not properly be considered by the jury in determining the question of his guilt or innocence of that charge. It may afford some explanation, if not justification, for the prosecuting attorney's remarks, but we think such remarks should not have been made. However, we have not before us the entire argument, nor any of the argument of defendant's counsel, as had the trial court, and are not in as good position to judge whether or not the argument was so prejudicial as to call for declaration of a mistrial. The court promptly sustained defendant's objection. The prosecuting attorney withdrew the remark, stating that he should not have made it, in effect apologizing for having done so, thus putting himself in "an apologetic, if not a humiliating, position in having said something that he ought not to have said." [See Griggs v. K. C. Rys. Co. (Mo.), 228 S. W. 508, 513 (9).] Defendant asked for no reprimand or for any ruling other than discharge of the jury. In the circumstances shown we cannot say that such drastic action was called for. [Consult on this point, State v. Reagan (Mo.), 108 S. W. (2d) 391, 397-8.]

■ Defendant urges as reversible error that the verdict resulted from passion and prejudice of the jury because of comments by jurors in the jury room during their deliberation concerning his character, to the effect that he was a man of bad character and ought to be incarcerated and further that on the last ballot the vote was not counted and that in fact one juror voted not guilty, wherefore there was not the unanimous verdict of guilty required in criminal cases. The sole proof in the record of these assertions is the affidavit of one of the jurors who sat in the case and concurred in the verdict, which affidavit was filed with the motion for new trial and was in substance that during the deliberations of the jury, after submission of the case, "certain jurors," not naming them, said that defendant was a bad character, a menace to society and should be put way; that "certain other jurors" said they personally knew defendant to be a man of bad character; and that "the only issue

in the case seemed to be that the defendant was a bad character, had committed former crimes, and should be incarcerated even though in the instant case the state might have failed to prove defendant guilty beyond a reasonablt doubt.''

It is well-settled law in this State that a juror will not be heard to impeach his own verdict or the verdict of a jury of which he was a member. There are many cases so holding. [Illustrative, see: State v. Rumfelt, 228 Mo. 443, 455, 128 S. W. 737; State v. White, 316 Mo. 210, 289 S. W. 953; State v. Stogsdill, 324 Mo. 105, 23 S. W. (2d) 22; State v. McGinnis, 320 Mo. 228, 7 S. W. (2d) 259; State v. Keller (Mo.), 104 S. W. (2d) 247.] There being in the record nothing other than said juror's affidavit to indicate passion or prejudice, or to show misconduct, on the part of the jury, and said affidavit being incompetent for such purpose, this assignment of error must be denied.

It is assigned as error that ''the jury was not properly polled by the court.'' The assignment is too indefinite. No explanation or reason for this charge is stated. The record reveals no dereliction of duty on the part of the court in this respect. We will presume that the court properly discharged its duty in accepting the verdict.

There are several other assignments of error which, as stated in the motion for new trial, are clearly too general and indefinite, under repeated rulings of this court, to present anything for review. We deem them without merit but shall not take space to enumerate or discuss them because not properly here. We have discussed all the questions presented in defendant's brief that seem to merit consideration. Defendant appears to have had a fair trial and the verdict is supported by substantial evidence. We find no prejudicial error in the record. The judgment of the circuit court is affirmed. *Westhues* and *Bohling,* CC., concur.

PER CURIAM:—The foregoing opinion by COOLEY, C., is adopted as the opinion of the court. All the judges concur.