THE STATE v. T. W. FLYNN, Appellant.

Division Two, May 26, 1914.

1. **APPEAL: Bad Reputation of Appellant: Not Preserved in Motion for New Trial.** The contention of appellant that his bad reputation for honesty could not be shown by the State until he had offered testimony showing good reputation, will not be considered on appeal if the point is in no wise preserved in the motion for a new trial.

2. **INFORMATION: Duplicitous: Raised by Motion to Quash.** Duplicity in an information (charging two different crimes in the same count) as a general rule is cured by verdict; but it is error to refuse to sustain a timely motion to quash a duplicitous information, and if the motion is timely made and the error properly preserved for review, a judgment of conviction, if the information is in fact duplicitous, will be reversed.

3. ————: ————: **Robbery.** Sec. 4530, R. S. 1909, defines but one offense of robbery, but it designates two methods of perpetrating that offense. The crime may be committed in two ways, namely, by taking the property of another from his person or by taking it in his presence and against his will; and either way of committing the crime may be effected by

State v. Flynn.

violence to the victim's person or by putting him in fear of some immediate danger to his person; and both ways may be charged in the same count of the same information, without violating the rule against duplicity. Thus, as in this case, the information was not duplicitous in charging in the same count that defendant committed robbery (1) by taking his victim's money from his person and effected the taking by violence to his person and (2) by taking an order for $1000 from his victim by putting him in fear of immediate danger to his person.

4. ————: ————: ————: **Conjunctively Stated.** An information may charge the one crime of robbery and state conjunctively in the same count the two methods of perpetrating it, since the two methods are not repugnant and inconsistent. The rule is that where by the statute a single given crime may be committed in several different ways, the information may charge in the conjunctive that it was committed in all of such ways, provided they are not inconsistent with or repugnant to each other.

5. **ROBBERY: Sufficient Evidence: Appellate Practice.** The Supreme Court does not pass upon the weight of the evidence. If there is substantial evidence of all necessary facts required to be proven in a given case, the weight of the evidence is' for the jury, subject to the superintendence of the trial court, who is given a broad discretion in that behalf; and there being such substantial evidence of defendant's guilt, the Supreme Court will not say it was not sufficient to support a conviction.

6. **INSTRUCTIONS: Refusing Defendant's.** It is not error to refuse correct and proper instructions requested by defendant, where the court of its own motion has already sufficiently and properly instructed the jury on the points covered by those refused.

Appeal from Greene Circuit Court.—*Hon. A. A. Johnson*, Judge.

AFFIRMED.

*John T. Barker*, Attorney-General, and *Thomas J. Higgs*, Assistant Attorney-General, for the State.

(1) The information charges robbery in the first degree, sufficiently follows the statute and is in a form approved by this court. Sec. 4350, R. S. 1909; Kelly's

Criminal Law & Procedure (3 Ed.), 625; State v. Jenkins, 38 Mo. 372; State v. Farrar, 38 Mo. 457; State v. Calvert, 209 Mo. 280. Where the statute describes an offense as being committed in several different ways the information may charge in the same count the commission of the offense by one or more ways where the same are not repugnant. It is not improper to charge robbery by force and violence and robbery by putting in fear of immediate bodily harm in the same count. Bishop's Stat. Crimes (3 Ed.), sec. 244; State v. Harroun, 199 Mo. 528; State v. Calvert, 209 Mo. 286. (2) Error is alleged in that the evidence does not show that there was any value attached to the order or check introduced in evidence and proven to have been signed by the prosecuting witness after threats were made and acts of violence done to him by the defendant. The information in the case at bar charges the defendant not only with taking the order or check in question for the amount of one thousand dollars, but also with taking sixteen dollars lawful money of the United States. Instruction 1 of the court instructs the jury both as to the taking of money and an order for the payment of money, and the prosecuting witness testified to having sixteen or eighteen dollars in his pocket at the time of the assault, and that this money was missing immediately after the assault. The putting in fear of immediate bodily injury and not the value of the property is the essence of robbery. The value of the property taken is immaterial. Kelly's Crim. Law & Procedure (3 Ed.), 635; State v. Jenkins, 36 Mo. 472; State v. Howerton, 58 Mo. 581; People v. Stephens, 141 Cal. 489. The same property which is the subject of larceny is the subject of robbery. 34 Cyc. 1798; Sec. 4540, R. S. 1909. The check in question would certainly follow this section. The money might have been collected thereon under certain contingencies and, therefore, would be of some value. However, in

the case at bar the appellant was charged with the taking of sixteen dollars in addition to the order mentioned and any amount of money, however small, is sufficient property to be the subject of larceny. Kelly's Crim. Law & Procedure, 635; 2 Russell Cr. (6 Ed.), 80; 4 Blackstone Com., 643; Bonsall v. State, 35 Ind. 460; State v. Jenkins, 36 Mo. 372; State v. Howerton, 58 Mo. 581.

FARIS, J.—Defendant, convicted in the criminal court of Greene county of robbery in the first degree and having had assessed against him as punishment therefor imprisonment for a term of five years in the penitentiary, has, after the usual motions for a new trial and in arrest of judgment, appealed to this court.

Defendant is not represented here by counsel and no brief has been filed by him or for him. Below he was represented by counsel appointed in that behalf by the trial court.

Going through the record, as in duty bound, we note that the information was attacked both by a motion to quash urged before the trial and by a timely motion in arrest of judgment. In view of these attacks upon the information and since thereby a debatable question is presented, we set out below this information, caption and verification omitted:

Sam M. Wear, Prosecuting Attorney within and for the county of Greene, in the State of Missouri, under his oath of office informs the court that T. W. Flynn, late of the county and State aforesaid, on the —— day of January, A. D. 1913, at the county of Greene and State of Missouri, did then and there in and upon one George Dooley, unlawfully and feloniously did make an assault and sixteen dollars lawful money of the United States of the value of sixteen dollars and one order on the Citizens Bank, a corporation duly organized and doing business under the laws of the State of Missouri, for one thousand dollars of the value of one thousand dollars, said order being of the following tenor:

State v. Flynn.

"Jan. 11, 1913.

"To the Citizen Bank Springfield Missouri
    Pay to the order of T. W. Flynn
One thousand dollars $1000.

GEORGE DOOLEY."

All of the aggregate value of one thousand and sixteen dollars, the personal property of the said George Dooley, from the person and in the presence and against the will of the said George Dooley, by force and violence to the person of the said George Dooley, and by putting the said George Dooley in fear of some immediate injury to his person, feloniously did rob, steal, take and carry away, contrary to the form of the statute in such cases made and provided against the peace and dignity of the State.                          SAM W. WEAR,
                                    Prosecuting Attorney.

It is strenuously urged in a number of assignments of error, both in the motion for a new trial (where among other places it is proper to urge them) and in the motion in arrest (where it is not proper to urge them), that the evidence adduced upon the trial was not sufficient to sustain the verdict. These contentions render it necessary to briefly set out the facts as the evidence discloses them.

As the information itself forecasts, the person alleged to have been robbed was one George Dooley. Dooley was at the time of the trial sixty-six years of age, engaged in farming in the country near Springfield and also in the business of peddling butter, eggs and feed in the latter city. Dooley had been acquainted with the defendant Flynn, as well as with the wife of defendant, for about four years prior to the alleged robbery and had at divers times during said period sold butter, milk and eggs both to Flynn, and to Flynn's wife during defendant's absence in Oklahoma. The alleged robbery occurred on the night of January 11, 1913, about the hour of twelve o'clock midnight, at the residence of defendant. Taking first the testimony of Dooley, the prosecuting witness, the facts as shown by the State were that on the morning of January 11, Dooley had come into Springfield with butter

and milk and had gone to the house of defendant some-time in the forenoon of that day and left some butter there, and had, it seems, made arrangements with defendant's wife to eat his dinner at the house of the latter, which he subsequently did at about three o'clock in the afternoon. At about the hour of ten o'clock that night Dooley again went to the residence of defendant for the purpose, as he says, of obtaining a jug which he had left there. He found the wife of defendant at home apparently alone, and made inquiry of her as to whether she was alone and as whether anyone was coming to stay with her that night. Mrs. Flynn stated that she was alone but that she expected someone to come and stay with her. Dooley says that he was also told by Mrs. Flynn that defendant was absent in the "oil fields," which "oil fields" appear to have been those at Tulsa, Oklahoma. Dooley further says that after talking to Mrs. Flynn for some little time she undressed in his presence and went to bed, but that while he took his shoes and overcoat off he did not himself go to bed, though he sat on the edge of the bed in which Mrs. Flynn lay, and while he was thus sitting on this bed and at about the hour of twelve o'clock the defendant suddenly pushed the door open, rushed into the room and assaulted him by striking him over the head with some sort of instrument; that this attack and these blows dazed him, and afterward from being beaten in the face by defendant, either with his fist or some weapon or other instrument, witness became partially unconscious, and while in this condition from these several attacks his pocket-book, containing some $16 or $18, his watch and some papers and documents not here pertinent, were taken from him. After the conclusion of the assault the defendant wrote out and presented a paper for his signature, which paper the witness signed, after being threatened with death unless he did so. This is the order for the pay-

ment to defendant of $1000, a copy of which is set out in the information.

Other testimony in the case shows that Dooley was very seriously injured by this assault; that he was found at the restaurant of one McGinnis distant some four blocks from defendant's house shortly after this assault, apparently in a dazed or semi-conscious condition and unable to give a very clear or coherent account of the manner in which he had been injured. The physician who was called to attend him at about the hour of one o'clock in the morning of January 12, testified that he found him incoherent and in a semiconscious condition. On the Monday following the assault upon Dooley, the defendant presented to the cashier of the Citizens Bank the order set out in the information and asked that it be cashed. The cashier refused to honor this paper in the form in which it was, but wrote out a check on the bank and asked defendant to procure Dooley's signature to such check. This does not appear from the record to have been done, nor does it appear that any money or other thing of value was ever obtained by defendant upon the order in question. When defendant was arrested the officer making the arrest found the watch of prosecuting witness in the possession of defendant.

On the part of defendant the latter testifying for himself, admitted that he had assaulted Dooley, but denied that he had taken his pocket-book or money and averred that the order which he attempted to cash and which is set out in the information was voluntarily given him by Dooley in order to prevent the arrest of Dooley for having been found by defendant in a compromising situation with defendant's wife. In more extended detail defendant's explanation was that he had come home from Oklahoma on a train which reached Springfield about 11:40 at night and had gone directly to his residence. Upon arriving there he found the door closed and fastened by having a chair placed

and braced against it; that he pushed it open, struck a match and found Dooley standing in the floor engaged in putting on his clothes, and the wife of defendant, whom he had heard get out of bed, near the door and apparently in an attitude as if she had attempted to prevent defendant from entering. Defendant further states that after vainly trying to get some explanation from Dooley as to his presence in defendant's home and bed with the defendant's wife, that he assaulted Dooley; that in the scuffle Dooley fell out of the door on to the stone steps and into the yard. Defendant says that after he had thus thrown Dooley out of the house, or after he had thus fallen out of the house and while defendant was talking to the latter's wife and trying to get an explanation from her, Dooley came back into the house, upon which defendant told him (Dooley) to get his clothes on and get the rest of his things, that he was going to take him to police headquarters; thereupon, says defendant, Dooley began begging him not to have him arrested and thus expose him and defendant's wife, and asked if there were not some way of settling the matter, and that he ultimately proposed to give defendant a thousand dollars to settle it without trouble or exposure. This arrangement, according to defendant, was finally agreed upon, but having no check book, the order, as it appears in the information, was written out on a common sheet of paper.

The wife of defendant testifying for him, in the main corroborates him as to the occurrence after defendant got into the house. She goes further and says that Dooley had been in bed with her for some hour or more prior to the return of defendant; that Dooley had come to her house at about the hour of nine o'clock and had remained there until defendant came in, as stated above. She further says that about the hour of 10:30 she undressed in Dooley's presence and went to bed, and that thereupon he also undressed and

against her will and protest, got into bed with her; that she told him to leave, but that he refused to do so.

Both defendant and his wife were seriously impeached, the former by proof of bad reputation for honesty, veracity and morality, and the latter by proof of divers conflicting statements made by her to newspaper reporters and to police officers, and by a showing that she had pleaded guilty in the police court of Springfield to the violation of sundry ordinances seriously affecting her chastity.

In passing we may say that objection was made by counsel for defendant to proof by the State of defendant's bad reputation, among other phases, for honesty; the specific contention of defendant being that bad reputation for honesty could not be shown by the State until the defendant had offered testimony showing good reputation, which defendant had not done. But we need not further discuss this question, but will here permit it to fall out of the case, since it is in no wise preserved for our review, either directly or by remote implication, in the motion for a new trial. We will save the discussion of it until it shall arise squarely for our ruling.

The facts above are deemed sufficient to make clear the discussion of the several questions which we consider involved in this case.

I. It is strenuously contended by defendant that this motion to quash the information in this case should have been sustained. He bottoms this contention upon the alleged ground that the information herein charges defendant with the commission of two different offenses in the same count thereof. In other words, he avers that the information is duplicitous. If his contention be well bottomed it is equally clear that the court erred in not sustaining the motion to quash. [State v. Harroun, 199 Mo. 519.] The general rule is that duplicity in

**Information: Duplicitous.**

an information or an indictment is .cured by verdict (State v. Nieuhaus, 217 Mo. 332; State v. Davis, 237 Mo. 237); but that it is error to .refuse to sustain a demurrer or a motion to quash a duplicitous indictment or information when the attack is timely made and the error properly preserved for review. There is no question but that the attack here was properly and timely made, and if it turn out that this information is in fact duplicitous, that the error is and ought to be fatal.

Turning to section 4530, Revised Statutes 1909, which defines the offense of robbery in the first degree, under which defendant here was convicted, we find that it defines and denounces but a single offense (State v. Montgomery, 109 Mo. 645); but that it sets out, so far as the degree and phase thereof shown by the evidence in this case is concerned, at least two methods of perpetrating the one crime defined. That is to say, the crime of robbery in the first degree may be perpetrated in two *ways,* viz.: either by taking the property of another from his person, or by taking it in his presence and against his will; the *means* by which such crime is perpetrated may be either by violence to the victim's person, or by putting him in fear of some immediate injury to his person. The proof in this case clearly shows that the taking of Dooley's money was from his person, and that it was perpetrated by violence to his person; that is, by assaulting, beating and wounding him and by forcibly extracting his pocket-book from his person, and that the taking of the order from Dooley was perpetrated by putting him in fear of immediate injury to his person, that is, by threatening him with death unless he signed and delivered to defendant said order, which among them they there concocted. In passing and somewhat parenthetically we may here say that some objection, not amounting in our view to a proper saving of the point for our consideration, was made to the effect that the

signing of the order on the bank for the sum of $1000 was not robbery, and that if it was, it was not properly charged, and that the paper on which the order was written had no value and that the same was not under the proof the property of Dooley. While, as we suggest, this point was not in our view properly preserved, yet we may say of it that the circumstances and every detail of evidence touching it were part of the *res gestae* (State v. Anderson, 252 Mo. 83), and as such, admissible without question as proof in the case. Outside of all of the facts and circumstances recited in the evidence and in anywise bearing upon this order, there was ample proof in the record that defendant had taken from Dooley the pocket-book and money charged in the information under such circumstances as to constitute robbery within the purview of section 4530, supra. If the sum total of defendant's acts had upon the occasion been but the compelling of Dooley to sign the order, the point would be a live one to vex us. But it is not and we need not worry with it.

Returning now to the question of duplicity, and turning to the facts in the case, we find that the offense charged was perpetrated *both* by violence to the person of Dooley *and* by putting him in fear. Turning to the information it will be seen that the information, as is proper, charges the means used in the conjunctive, while the statute defines this one offense of robbery in the first degree in the disjunctive. We are mindful that there are cases in which such an information would be fatally defective, but we apprehend that this arises from the fact that the charges in the information are inconsistent and repugnant to each other. For example—if a defendant were charged in a single count of an information with murder in the first degree as having been committed both by poison and by lying in wait—since such charges would be inconsistent and repugnant, we apprehend that a timely motion to

quash should be and would be sustained. But as we see, that is not the condition here. The proof shows that in the instant case both ways were used. The pleader charges these facts and properly charges them in the conjunctive. They are not in anywise repugnant, but on the contrary are entirely consistent each with the other and with the facts.

From this we may with much of safety deduce the rule, that when by statute a single given crime may be committed in several different methods, the information or indictment may charge in the conjunctive, that it was committed by all of such methods, provided such different methods are not inconsistent with or repugnant to each other. [State v. Harroun, 199 Mo. l. c. 528; State v. Nieuhaus, 217 Mo. 332; State v. Montgomery, supra.] They are neither inconsistent nor repugnant with each other under the facts here, nor under the charge here.

A very similar contention arose in the case of State v. Montgomery, supra, and which differs from the case at bar only in the fact that defendant was indicted there for an attempt to rob and not for a robbery. The indictment in that case, it seems, charged defendant with having attempted to commit a robbery in both of the ways denounced by our statute. It was held that this was not improper. Touching the indictment in that case it was said by the learned judge who wrote the opinion, thus: "Stripped of its verbosity, the indictment in this case charges that the defendant and Ben Montgomery attempted to commit the crime of robbery, by attempting to take by force $170 belonging to George C. Milburn, in the latter's presence, from his person, by violence to his person, and by putting him in fear of some immediate injury to his person. These averments are not repugnant to, but perfectly consistent with each other."

In the case of State v. Harroun, 199 Mo. l. c. 528, the rule set out by Mr. Bishop in his several works

mentioned in the excerpt, is quoted with approval, thus: "Bishop says: 'If, as is common in legislation, a statute makes it punishable to do a particular thing specified, "or" another thing, "or" another, one commits the offense who does any one of the things, or any two, or more, or all of them. And an indictment may charge him with any one, or with any large number, at the election of the pleader; employing, if the allegation is of more than one, the conjunction "and" where "or" occurs in the statute. "The rule," it was once observed, "is undoubtedly limited in its application to cases where the offenses created in a statute are not repugnant." And whatever be the form of the allegation, the proofs need sustain only so much of it as constitutes a complete offense.' [Bishop on Statutory Crimes (3 Ed.), sec. 244.]

"The same author says: 'To repeat what was explained in another connection, if a statute makes criminal the doing of this, or that, mentioning several things disjunctively, there is but one offense, which may be committed in different ways; and in most instances all may be charged in a single count. But the conjunctive "and" must ordinarily in the indictment take the place of "or" in the statute, else it will be ill as being uncertain. And proof of the offense in any one of the ways will sustain the allegation. On the other hand, the indictment may equally well charge what comes within a single one or more classes, less than all, of the statute, and still it embraces the complete proportions of the forbidden wrong.' [1 Bishop's New Criminal Proc., sec. 586.]"

It is apparent that both the statute and the adjudicated cases contemplate in a proper case the identical pleading found in the information here criticized, and so far from an information so couched being in violation of the constitutional provision that a defendant shall be informed of the charge against him, it may well be said that in a proper case such an informa-

tion as the one at bar does with certainty and in detail exactly inform the defendant of the precise charge he is called upon to meet, and at the same time does not require him to meet but one single charge. It logically follows we think, on principle as well as on the decided cases, that this point should be disallowed to the defendant, and the information held good.

II.   Touching the other point seriously mooted by defendant that there is not in the record sufficient evidence of defendant's guilt to go to the jury, we may say that we have endeavored to set out the salient facts fairly, and that there is no manner of question but that these are sufficient to form the basis of the verdict rendered herein by the triers of fact. We do not sit here to pass upon the weight of the evidence. Such weight, where there is substantial evidence of all necessary facts required to be proven in a given case, is for the jury, subject to the superintendence of the trial court who is given in this behalf broad discretion. [Ewart v. Peniston, 233 Mo. 695.] In the light of this rule we cannot say that the verdict of the jury in this case is not bottomed upon sufficient evidence. In our view, after having gone carefully over the record, so far from finding it lacking in substance, we are constrained to say that, even when viewed upon the cold record, we are unable to see how the jury could have reached any other conclusion than that they did reach. We must, therefore, hold that the evidence of defendant's guilt was sufficient, if the jury believed it, and the result indicates that they did, to form the basis of the verdict returned by them.

Objections are lodged with us as to the refusal to give certain instructions offered by defendant. Some of the instructions so offered were correct and proper expositions of the law and some of them are incorrect. Where they are correct the court, as the record shows, had already sufficiently and properly instructed the

jury of his own motion.  We have gone over them with much care and find no merit in them or any of them on account of the reasons we suggest.  No good purpose would be subserved by lengthening this opinion with any further discussion of them.

It results, therefore, that since we find no error properly preserved for our review which is of sufficient moment to justify a reversal, and since we find sufficient evidence of defendant's guilt to justify the verdict rendered, this case must be affirmed.  It is so ordered.

*Walker, P. J.*, and *Brown, J.*, concur.