THE STATE v. ARTHUR McGINNIS, Appellant.—7 S. W. (2d) 259.

Division Two, May 25, 1928.

*J. W. McClelland* and *Barney Reed* for appellant.

*North T. Gentry,* Attorney-General, and *H. O. Harrawood,* Special Assistant Attorney-General, for respondent.

HENWOOD, C.—By an information filed in the Circuit Court of Morgan County, appellant was charged with the unlawful transportation of intoxicating liquor commonly called "Hootch Moonshine Corn Whiskey" in the first count, and with the unlawful sale and giving away of the same in the second count. The jury found him guilty as charged in the first count and assessed his punishment at imprisonment in the penitentiary for three years. He was sentenced accordingly, and appealed.

The evidence produced by the State shows that the closing exercises of the Coffey School, in Morgan County, were held on the afternoon of April 22, 1926, and that, while the entertainment was going on, appellant and several other young men interested themselves in drinking liquor from a half-gallon jug, on the school grounds and in the vicinity thereof. It does not appear, by direct evidence, who took the jug of liquor there, but it does appear that appellant claimed it, and that, late in the afternoon, he put it in his Ford roadster and drove away. It further appears that appellant and his nephew, Roy McGinnis, became intoxicated, and that both of them accused Pete Taylor of attempting to steal the whiskey and engaged in a fight with him as a result of such accusation. As to the character of the liquor in the jug and appellant's actions in connection with it, Edmund Metcalf testified as follows:

"Q. Did you see him when *he* left? A. Yes, sir.

"Q. What, if anything, did *he* put in his car before he went away? A. *A half gallon jug.*

"Q. Where did *he* get it? A. Well, *he* claimed on the start that he had it hid. *He* accused Pete Taylor of stealing it and this boy was drunk and forgot where he had it and my brother found it up on the hill, there, and Earl McClure and Louis Hildebrand was watching it. When *he* came down there *he* said something like 'you damned son of a bitch' and took the jug away from him and *put it in his car and left.*

"Q. Do you know what was in the jug? A. Whiskey.

"Q. What kind of whiskey? A. *Corn whiskey,* I guess. That is the only kind we have got.

"Q. Was it white? A. Yes, sir.

"Q. Well, the jug that you saw him take away with him—did you examine into the jug to see what was in it? A. I did. I seen the jug before ever he got it.

"Q. Did you get a drink out of it? A. No, I didn't drink any of it, but I smelled of it and poured a little of it out—*to see what it was.*"

When interrogated along the same line, Homer Metcalf gave the following testimony:

"Q. State, later on in the day, if anyone claimed that whiskey as his own? A. *Arthur McGinnis,* and *he took it home* with him late in the evening.

"Q. (BY THE COURT): Was there any whiskey left in it that night? A. *There was some left when they left with it.*"

Louis Hildebrand, Roy McGinnis and Luther Gee were the only witnesses who took the stand in behalf of appellant.

Louis Hildebrand said he did not know who took the whiskey to the schoolhouse. When asked if appellant took any whiskey away from the schoolhouse, he said: *"I don't remember, now, whether he did or not."* He further testified that Roy. McGinnis said the whiskey belonged to Homer Metcalf. When cross-examined, he admitted that appellant lived in his home and that he and appellant left the schoolhouse toghether in the Ford roadster.

Roy McGinnis said he did not know who brought the whiskey to the schoolhouse, nor who took it away, but admitted that he saw Homer Metcalf *put the jug in appellant's car.* On cross-examination, he further admitted that appellant "was there by the car" when Homer Metcalf put the jug in the car, but insisted that Homer Metcalf "said it was his'n." And he further admitted that both he and appellant had a fight with Pete Taylor over the whiskey.

Luther Gee testified that he had visited Louis Hildebrand's home, where appellant lived, and had never seen any whiskey nor bought any whiskey there.

I.   Counsel for appellant contend with great earnestness that the evidence is not sufficient to sustain this conviction.   We see no merit in this contention.   Both the character of the liquor and the transportation of the same by appellant were established by positive testimony.   Referring to the liquor in the jug, Edmund Metcalf said he "smelled of it and poured a little of it out—to see what it was," and that it was "corn whiskey." This court has repeatedly held that lay witnesses may be permitted to identify hootch, moonshine and corn whiskey by their ordinary experience in tasting or smelling it.   [State v. Wheeler, 2 S. W. (2d) 777; State v. Stough, 2 S. W. (2d) 767; State v. Sappington, 2 S. W. (2d) 729; State v. Black, 289 S. W. 804; State v. Brown, 285 S. W. 995; State v. Brock, 280 S. W. 48.]   Two of appellant's companions on the occasion in question (the Metcalf brothers), testified, in substance, that he (appellant) claimed the whiskey as his own, that he fought for it, and that, when the party was over, he put what was left of it in his car and went on his way rejoicing.   Appellant's nephew and witness (Roy McGinnis) said the jug was put in appellant's car, while appellant "was there by the car."   Another witness for appellant (Louis Hildebrand), who left the school grounds with appellant in the Ford roadster, said he did not "remember" whether appellant took any whiskey away.   These facts and circumstances are not only sufficient to support the finding of the jury that appellant took the jug of whiskey away from the schoolhouse in his car, but also that he took it to the schoolhouse in his car, if they did so find.   [State v. Janes, 1 S. W. (2d) 137; State v. Knight, 300 S. W. 719; State v. Steelman, 300 S. W. 743; State v. Connor, 300 S. W. 685; State v. Bishop, 296 S. W. 147; State v. Thompson, 289 S. W. 648; State v. Helpley, 279 S. W. 701; State v. Bennett, 270 S. W. 295.]

II.   It is also contended that the punishment assessed by the jury is excessive, that the verdict was prompted by passion and prejudice on the part of the jury, and that the jury was influenced by the failure of the appellant to testify in his own behalf and by matters outside of the evidence.   The fixing of punishment for crime is a legislative and not a judicial function, and, when, as in this case, the punishment assessed is within the range prescribed by statute, it cannot be adjudged to be excessive by our appellate court.   [State v. Wheeler, 2 S. W. (2d) 777; State v. Alexander, 285 S. W. 984.]   The only proof offered in support of the charges made against the jury in the motion for a new trial was the testimony of J. H. Waddell, who was a member of the jury.   The trial court properly excluded the testimony of this witness, on the ground that the verdict of the jury could not be im-

peached by a member of the jury. [State v. White, 289 S. W. 953.] We find nothing in the record to indicate that the jury was moved by passion and prejudice or by any other improper consideration. In the absence of proof, charges of this kind are of no avail. [State v. Wheeler, 2 S. W. (2d) 777; State v. Helpley, 279 S. W. 701; State v. Renfro, 279 S. W. 702.]

III. The further complaint is made that the jury was prejudiced against appellant by the evidence admitted in connection with the State's attempt to prove the charge alleged in the second count of the information, that is, that he sold and gave away some of the whiskey in the jug. The question of misjoinder was not raised, by demurrer, motion to quash, or motion to elect, and appellant made no objection to this evidence when it was offered. Counsel for appellant state, in their brief, that "at the close of the State's evidence, the second count of the information was dismissed by the court." While the record shows no formal dismissal as to the second count, the court did not instruct the jury on the second count and the jury made no finding on that count. Having failed to attack the information or to object to this evidence when offered, appellant was not in a position to complain about this evidence in his motion for a new trial, and, of course, such complaint is worthless on appeal. And this is true, whether the record be taken as a dismissal or as an acquittal as to the second count of the information. The misjoinder was cured by the verdict. [31 C. J. 883; State v. Brown, 296 S. W. 125; State v. Flynn, 258 Mo. 211, 167 S. W. 516.]

IV. Other assignments of error relating to the admission of evidence are general in character and do not specify with any degree of particularity the matters complained of. Likewise, are the assignments of error relating to certain instructions given to the jury. Such assignments present nothing for our review. [New Sec. 4079, Laws 1925, p. 198; State v. Murrell, 289 S. W. 859; State v. Standifer, 289 S. W. 856.]

V. It is seriously urged that appellant was entitled to a new trial on the ground of newly-discovered evidence. In support of his motion for a new trial on that ground, appellant offered the affidavits of J. R. (Pete) Taylor, Jack Stringer and Louis Hildebrand. The affidavits are to the effect that these affiants were present and saw the jug of whiskey on the occasion in question and that it was empty when it was put in appellant's car and taken away from the school grounds.

All of these affiants testified, at length, at the trial of this case, Taylor and Stringer for the State, and Hildebrand for appellant. Both Taylor and Stringer testified that they were not at the school grounds when appellant left there, but they were not asked whether or not the jug was empty when they left. Hildebrand, when asked the direct question, at the trial, whether appellant took any whiskey away from the school grounds, testified: "I don't remember, now, whether he did or not." Certainly, appellant was not entitled to a new trial because these witnesses wanted another chance to testify .after their memories had been refreshed. The failure to fully cross-examine Taylor and Stringer at the trial shows a lack of diligence on the part of appellant and his counsel. Hildebrand's contradiction of his former testimony would not be very persuasive with the jury on another trial. Nor is it probable that the testimony of any or all of these witnesses would produce a different result on another trial of the case. On this showing of "newly-discovered evidence," appellant fell far short of meeting the requirements of the law, and it is apparent at once that the trial court committed no error in denying appellant a new trial on that ground. [State v. Goodwin, 300 S. W. 723; State v. Estes, 209 Mo. 288, 107 S'. W. 1059; State v. Church, 199 Mo. 605, 98 S. W. 16; State v. McKenzie, 177 Mo. 699, 76 S. W. 1015.]

VI.   Appellant filed a motion in arrest of judgment, in which he challenged the sufficiency of the information and the verdict. While motions in arrest of judgment, in criminal cases, were abolished by the Act of 1925 (Laws 1925, p. 198), and no longer have any place in our criminal procedure, we will examine the information and the verdict, because they form a part of the record proper. [Sec. 4106, R. S. 1919.]

The first count of the information follows the language of the statute, and covers all essential elements of the offense sought to be charged. [Laws 1923, sec. 21, p. 242.]   Informations similar in form and substance have been upheld by this court in numerous cases. [State v. Wheeler, 2 S'. W. (2d) 777; State v. Knight, 300 S. W. 719; State v. Padgett, 289 S. W. 954; State v. Cardwell, 279 S. W. 99.]

The verdict of the jury says: "We, the jury find the defendant guilty *as charged in the first count of the information*," etc. (Italics ours.)   It is responsive to the issue submitted and entirely sufficient in every particular. [State v. Knight, 300 S. W. 719; State v. Cardwell, 279 S. W. 99.]

No error appearing, either in the trial proceedings or the record proper, the judgment is affirmed.  *Higbee* and *Davis, CC.*, concur.

PER CURIAM:—The foregoing opinion by HENWOOD, C., is adopted as the opinion of the court.  All of the judges concur.