**STATE of Missouri, Respondent,**

**v.**

**Howard Lee McDANIEL, Appellant.**

**No. 51122.**

Supreme Court of Missouri,

Division No. 1.

July 12, 1965.

Norman H. Anderson, Atty. Gen., Jefferson City, Richard E. Crowe, Sp. Asst. Atty. Gen., Clayton, for respondent.

No brief filed for appellant.

HENLEY, Judge.

Defendant, charged by information with robbery in the first degree by means of a dangerous and deadly weapon, was found guilty by a jury and his punishment assessed at five years in the custody of the Department of Corrections. §§ 560.120 and 560.135. (All references to statutes and to Rules are to RSMo 1959 and V.A.M.S., and V.A.M.R., respectively.) His motion for judgment of acquittal or, in the alternative, for a new trial was overruled. Judgment was entered sentencing him in accordance with the verdict, and he appeals.

He was represented throughout the trial by able counsel, who also prepared, presented evidence on, and argued his above-mentioned after-trial motion. A brief has not been filed in his behalf in this court; therefore, we consider such points as may be preserved for review in his motion for new trial. Rule 27.20. In his after-trial motion consuming twenty pages of the transcript he has as many numbered paragraphs, some with subdivisions. Some paragraphs comply with Rule 27.20; others do not. Generally speaking, he says the court erred: (1) in overruling his motions for judgment of acquittal filed at the close of the state's case and at the close of the whole case, (2) in the admission and exclusion of evidence, (3) in giving, refusing to give, and in failing to give certain instructions, (4) in permitting improper argument by counsel for the state, (5) in restricting the location of counsel for defendant during his examination of a witness, and, (6) in permitting the jury to consider improper evidence acquired by one of the jurors during an unauthorized visit to the scene of the alleged crime as a result of the court's failure to instruct the jury to not visit the scene.

Evidence presented by the state would warrant the jury finding: That on the evening of October 7, 1963, at about 8:30, three negro men, one armed with a revolver, robbed Henri Tron in his place of business, taking furs of the approximate value of $9,000. Tron's business was known as "Henri Tron Furrier" and was located at 8600 Ward Parkway in the Ward Parkway Shopping Center in Jackson County. While working on furs with his helper, Marvin Vaughn, in the back room or shop, they heard the buzzer signal indicating someone was entering the front door. Tron got up from his sewing machine to go to the front or sales portion of the store. At a doorway of a partition separating the two areas he met a negro man wearing a rubber Halloween-type mask, who carried a revolver in his hand. On inquiry by Vaughn as to whether this was a Halloween trick, the negro replied, "No, sir, this is a stick-up", and commanded the two men to lie face down on the floor. In this position they were bound, hands and feet, with adhesive tape; their hands behind their back. They then heard the buzzer sound twice more, indicating two other persons had entered the front part of the store. Tron moved his body and was struck on the head with the revolver. The man with the revolver went to the front of the store from which Tron and Vaughn could hear their voices and see the legs of the three robbers moving about as they removed furs with their hangers from the racks. Both testified that the hand of the man with the revolver was that of a negro; that the three voices they heard in the front part of the store had negro accents. Apparently the robbery took only a few minutes. Shortly after the robbers left the two men managed to get loose from the tape, and Tron immediately reported the robbery to the police. Neither Tron nor Vaughn saw the faces of the three men and could not identify them.

On this evening Mrs. Cheryl Fanner Costley was working at the Elko Camera Store three doors North of The Promenade, onto which the entrance door of Henri Tron Furrier opens. Mrs. Costley had stepped outside onto the walkway in front of her store to determine whether an electric sign overhead was on, and was getting a breath of fresh air when she saw three

negro men with their arms loaded with furs running out The Promenade doorway. One of these men she positively identified as defendant. As they came through this doorway, the three turned to their right taking two or three steps toward her. She could see their faces. They then turned to their left to go to an automobile parked approximately 50 feet distant on the other side of the driveway adjacent to the Camera store. She said she also saw their faces as they glanced back over their shoulders enroute to the automobile. Apparently the whole area, including the driveway and parking area, The Promenade, and the walkways in front of the store, is well lighted. Two witnesses said: "[the] lighting is very, very good; in fact it is exceptionally good. It is almost like daylight there." Reaching their automobile the three men threw the furs into the back seat, got in, and on their way out of the shopping center passed within a few feet of Mrs. Costley. Defendant was sitting in the back seat behind the driver and as the automobile passed by her she saw his face again for a few seconds. The automobile was a Chevrolet bearing Missouri license number ZY5–042. Mrs. Costley immediately went into her store and wrote this license number on a piece of paper. The police arrived within a few minutes and she talked with Officer Sidney Vaughn to whom she gave the paper bearing this license number. The Halloween mask was found in the Tron store, and a mink skin was found on The Promenade floor where it had apparently been dropped by the robbers. A few days later Mrs. Costley went to police headquarters and examined books of photographs from which she selected and identified a photograph of the defendant as one of the robbers. Several weeks later she identified defendant in a "line-up" at police headquarters. She again identified defendant as one of the robbers at the trial. Two days after the robbery a 1961 Chevrolet bearing this license number was recovered by police detective John McLaury at 53rd Street and Indiana. Inside the automobile the officer found a garment tag bearing the name "Henri Tron Furrier" and nearby in the area he found thirteen wooden hangers with long metal necks commonly used for hanging furs, a partly used roll of adhesive tape, and a man's suit on which was found what he described as animal hair.

The defendant did not testify. He offered evidence, but this consisted chiefly of photographs of the shopping center taken at night to show the general layout of the area, a plat showing distances from stores and different points in the area to other points, all explained by testimony of the photographer, and Naval Observatory data showing the time of sunrise and sunset on the date of the robbery.

■ The evidence is sufficient to support the verdict and judgment. In paragraphs numbered 1 and 2 of his motion for judgment of acquittal or for a new trial defendant contends that the court erred in overruling his motions for judgment of acquittal filed at the close of the state's case and at the close of the whole case. Defendant offered evidence in his own behalf at the close of the state's case and, of course, waived any claim of error in overruling his motion made at the close of the state's case. State v. Spraggins, Mo., 368 S.W. 2d 407 [1]. The allegations of paragraphs 1 and 2 are long and rambling covering over eight pages of the transcript; basically, these allegations constitute a contention and argument that the verdict was against the weight of the evidence and that the testimony of certain witnesses, particularly Mrs. Costley, was not credible, for which reasons defendant says the court should have directed a verdict of acquittal. This court will not weigh the evidence where, as here, there is substantial evidence to support the finding of the jury and the judgment of the trial court. State v. Spraggins, supra.

■ Defendant assigns as error action of the court in sustaining an objection by the state to the following inquiry or request of Mrs. Costley during her cross-examina-

tion by defense counsel. "Q * * * Mrs. Costley, how would you describe the defendant's nose?" [Counsel for the State]: "Your honor, I will object to that; the defendant is right in front of this jury." This occurred after defense counsel had handed Mrs. Costley a photograph which she identified as a picture of defendant. We assume this photograph and defendant's true facial features were not the same as the witness had described them in a deposition. That is the implication of counsel's questions. By subsequent questions counsel caused her to admit she had previously testified that defendant had a sharp or thin pointed nose. How this witness who had thus described defendant in her deposition would now describe defendant's nose with him apparently in full view of both the witness and the jury may be one method of attacking the witness' credibility, but there are others, and this objection to the court's ruling is hypertechnical and the result immaterial. No doubt defendant got his point across to the jury by his subsequent method of having her admit her previous description which, as indicated, probably conflicted with defendant's features as seen by the jury. The court did not err in thus restricting the method or latitude of cross-examination. A similar complaint is made to the action of the court in sustaining an objection to another question asked this witness in an attempt to attack her credibility. The court sustained an objection to an inquiry as to whether the witness had been asked in her deposition if she had before that occasion ever seen counsel for defendant. By an offer of proof at this point it appears that counsel sought to attack her credibility by demonstrating her lack of ability to identify accurately counsel for defendant. This was done by showing she had testified in her deposition that defendant's counsel was present during the trial of another criminal case in which she was a witness when in fact he was not present. Although wide latitude should be permitted in cross-examination of a witness on matters affecting credibility, the scope of such examination on collateral matters, such as is described above, is not without its limitations and rests within the exercise of sound discretion on the part of the trial court. State v. Shilkett, 356 Mo. 1081, 204 S.W.2d 920, 924 [5]. The court did not abuse its discretion in so limiting cross-examination on this matter.

■ Defendant's next assignment is that the court erred in admitting in evidence a thermo-fax copy of the paper on which Mrs. Costley had written the license number of the automobile in which defendant was seen to leave the scene of the robbery. His contention is that it had not been shown that the original had been lost; that the copy was not the best evidence. The record shows that the copy offered and received in evidence was a true reproduction of the original and, through the testimony of Detective McLaury, that at the time of this trial the original paper was lost. The court did not err in admitting the copy in evidence. State v. McGee, 336 Mo. 1082, 83 S.W.2d 98, 108 [33]; State v. Barrington, 198 Mo. 23, 95 S.W. 235, 259 [17].

■ Defendant assigns as error the admission in evidence of the testimony of Henri Tron that the voices he heard during the robbery had a negro accent. The reason stated in his objection to this testimony was: "I don't believe the proper foundation has been laid." We can assume only that defendant had reference to the qualifications of the witness to identify negro accents for defendant makes no further explanation of what he meant by lack of foundation. Mr. Tron testified that he had heard negro accents before this occasion. The witness was obviously qualified to identify the accent and the court did not err in admitting this testimony. This testimony was not offered or received in evidence to identify specifically defendant as one of the robbers, but was merely to identify the probable race of the robbers. This court has held that recognition and identification of a defendant by his voice alone was sufficient to carry a robbery case to the jury. State v. Bell,

Mo., 300 S.W. 504, 505 [1]; State v. Hall, Mo., 7 S.W.2d 1001, 1004 [2]. Permitting a case to go to the jury on the identification of defendant by his voice goes further than was attempted here.

In the next point considered he assigns as error the admission of evidence of flight by defendant from a police officer three days after the robbery. Officer Eugene Buie testified that there was a police headquarters order for a "pick-up" of defendant for investigation in connection with the Tron robbery; that he knew defendant; that on October 10, 1963, he saw defendant about 50 feet distant walking across Brooklyn at 11th Street; that defendant saw and recognized him as a police officer at about the same time and ran, eluding arrest. The officer next saw defendant on December 4, 1963, and arrested him. Defendant told the officer he had been to California in the interim. Asked by the officer why he ran from him in October, defendant replied, according to Buie, because, "he was scared and didn't want to go to jail." Evidence of flight is competent as bearing on the question of guilt or innocence. State v. Garner, 360 Mo. 50, 226 S.W.2d 604, 609 [7]; 22A C.J.S. Criminal Law, § 625b, page 467. Closely allied to this point is defendant's contention that the court erred in permitting counsel for the state to argue defendant's flight as an inference of guilt, particularly in view of the fact the court did not instruct the jury on the weight they were to give evidence of flight. The court did not err in permitting counsel to argue that an inference of guilt could be drawn from the fact that defendant ran from the officer. State v. Harris, Mo.App., 325 S.W.2d 352, 358 [16].

The next assignment of error is akin to and a part of the basis for defendant's objection to this argument; that is, that the court erred in failing to instruct the jury as to the weight to be given to the evidence of defendant's flight from Officer Buie. Defendant did not request an instruction on this subject. This is a collateral issue and absent defendant's request the court did not err in failing to give an instruction on flight. State v. Rhoden, Mo., 243 S.W.2d 75, 79 [10].

The allegations of paragraphs 14, 15 and 16 of defendant's motion are so indistinct, unclear and obscure we cannot determine what he would assign therein as error. His general, rambling, argumentative statements in each of these paragraphs repeating in each these three subjects: (1) testimony of Detective McLaury that the automobile recovered by him at 53rd and Indiana Streets was stolen (to which testimony the court sustained defendant's objection and instructed the jury to disregard), (2) a statement by the state's attorney in argument that "You know pretty well from your common experience where this car came from", and, (3) the alleged prejudicial effect of admission in evidence of a thermo-fax copy of the paper bearing the license number of the automobile in which defendant left the scene, do not comply with the requirements of Supreme Court Rule 27.20, V.A.M.R., and preserve nothing for review.

In paragraph 18 of his motion defendant complains of action of the court in requesting or suggesting that his counsel "stand back a little" from the witness during his cross-examination of Mrs. Costley. No objection to this request was made at the time; the allegations of the motion are not sufficient to comply with Rule 27.20, and the complaint preserves nothing for review. Too, the record shows that the manner of the court in making this request was courteous and could not have prejudiced defendant. And, as stated by defendant in his motion, the court was enforcing its Rule 20 requiring counsel to sit or stand at the counsel table while examining a witness.

The defendant assigns as error (in paragraph 20 of his motion) the court's refusal to give his offered instruction No. A. The instruction contains a misstate-

ment of the law: "The Court instructs the jury that they should not convict the Defendant on insufficient evidence, if the jury does find and believe beyond a reasonable doubt that the evidence is insufficient to sustain a verdict of guilty; * * *." The instruction would have been harmful to defendant, because it requires the jury to find the evidence insufficient beyond a reasonable doubt. The court did not err in refusing to give it for this reason alone. The balance of the instruction is cautionary in nature, telling the jury that their verdict should be based solely on the evidence. The giving of a cautionary instruction is discretionary with the court. State v. Hinojosa, Mo., 242 S.W.2d 1, 11 [23]. No abuse of discretion is shown.

■ Defendant next assigns as error action of the court in permitting counsel for the state in his closing argument to comment on the fact defendant did not testify. The argument referred to is: "She has seen this man now five or six times. This is important to remember. She says there is no doubt in her mind that this is the man. And note: There has been no contradiction to this identification. None whatsoever." The court overruled defendant's objection to this argument and his motion for a mistrial. We find no error in the action of the court, or in the argument. Similar arguments have been held to not constitute a comment on the failure of defendant to testify in the following cases, among others: State v. Siekermann, Mo., 367 S.W.2d 643, 651 [17]; State v. Hite, Mo., 298 S.W.2d 411, 413 [3]; State v. Murray, Mo., 280 S.W.2d 809, 811 [4].

■ In paragraphs 7, 8 and 9, of his motion defendant assigns as error action of the court in giving instruction No. 9, after the jury had retired to deliberate on its verdict. He contends that this instruction coerced the jury to return a verdict of guilty. He also contends the giving of this instruction, the verdict, and the remarks of the court commending the jury after they had returned the verdict, substantiate his

claim that the court was prejudiced against him. The contentions and claim are without merit. The record discloses: the jury retired to deliberate at 2:10 p. m.; at 5:40 p. m. the jury was returned to the courtroom and, on inquiry by the court, the foreman stated they stood 11 to 1, without indicating whether this standing was for guilt or innocence. The court then gave instruction No. 9: "It is desirable that there should be a verdict in every case. It costs considerable money and time to try a lawsuit, and the parties are entitled to have their rights determined in every case. I want to make it clear that no juror should ever agree to a verdict that violates the instructions of the Court, nor find as a fact that which under the evidence and his conscience he believes to be untrue. Yet each of you should respect the opinions of your fellow jurors as you would have them respect yours, and in a spirit of tolerance and understanding endeavor to bring the deliberations of the whole jury to an agreement upon a verdict." At 6:18 p. m. the jury returned its verdict. The instruction did not constitute coercion by the court. Like instructions have been held proper as against this contention in State v. Stegall, Mo., 327 S.W.2d 900, 901–2 [1, 2] and cases there cited.

■ In paragraphs 5 and 6, of defendant's motion he complains (1) that the court erred in failing to instruct the jury that members of the panel should not visit the scene of the robbery during the course of the trial; and, (2) that as a result of that failure one of the jurors visited the scene at night, during a recess, observed the lighting conditions thereat, and reported such to other members of the panel. This information, he says, the jury improperly took into consideration in their deliberations. Attached to defendant's motion in support of these allegations is the affidavit of counsel for defendant wherein he states that the foreman of the jury had told him that a member of the jury had visited the scene of the robbery to determine its lighting conditions, but that neither counsel nor

the foreman knew the name of this juror. On presentation of his motion defendant called to the stand Albert L. Donnell, Sr., foreman of the trial jury, by whom he sought to prove these allegations. He asked this witness whether during their deliberations any member of the jury had said that he had visited the robbery scene at night during the trial. An objection by the state that this evidence would be hearsay was sustained for that reason and for this further reason stated by the court: "because it is an attempt to impeach a jury verdict by a member of the jury." Defense counsel then made an offer of proof of the allegations of the motion. It is interesting to note that the offer of proof indicated that this still unidentified juror told the jury he went to the shopping center with his family as a matter of curiosity on his part to see how it was arranged; that he did not go to the point where the witness, Mrs. Costley, said she was standing when she saw defendant; and, that it was still daylight on the summer evening of his visit and the lighting conditions obviously not the same as the night of the robbery. The court did not err in sustaining the objection and declining the offer of proof. In the first place the testimony of Mr. Donnell would have been hearsay. Too, as stated by the trial court, the rule is that a juror will not be heard to impeach the verdict, whether the alleged misconduct occurred inside or outside the jury room. State v. Gabriel, 342 Mo. 519, 116 S.W.2d 75, 79 [10]. Quoting with approval from State v. Linn, 223 Mo. 98, 122 S.W. 679, 682, the court said in State v. Keller, Mo., 104 S. W.2d 247, 249: "This court, in State v. Underwood, 57 Mo. 40, laid down the rule that jurors speak through their verdict, and cannot be allowed to violate secrets of the jury room and tell of any partiality or misconduct that transpired there, * * * and this has become the settled law of this state." In State v. McGinnis, 320 Mo. 228, 7 S.W.2d 259, 260 [4] one of the contentions was that the verdict was influenced by matters outside the evidence; the court held the testimony of one of the jurors was

properly excluded. Also see: Hoffman v. Dunham, Mo.App., 202 S.W. 429, 431 [5, 6]; Reich v. Thompson, 346 Mo. 577, 142 S.W.2d 486, 492 [9, 10], 129 A.L.R. 795; State v. Stogsdill, 324 Mo. 105, 23 S.W.2d 22, 31 [27–29]. The affidavit of counsel for defendant was incompetent for the purpose for which it was made. Hoffman v. Dunham, supra; State v. Gabriel, supra. In State v. Finnell, Mo., 280 S.W.2d 110, 114 [10], this court said: " * * * affidavits or testimony of third persons as to statements of jurors tending to impeach their verdict are inadmissible, not only as hearsay but also for the same reason which excludes the affidavits or testimony of the jurors themselves."

The actions of a juror in visiting the scene of an alleged crime during the course of a trial, such as that which would be described in the offer of proof, are, of course, not to be countenanced. However, even in this offer of proof there is no indication that the jury considered the information allegedly imparted to them, nor that it affected their verdict. The matter of the granting of a new trial for alleged misconduct of a juror is largely within the discretion of the trial court and we do not consider that under the circumstances of this case that discretion was abused. Hoffman v. Dunham, supra.

As to defendant's complaint that the court erred in failing to instruct the jury not to visit the scene, we note that throughout the trial this able and conscientious trial judge very carefully, even before the jury was sworn to try the issues, and at every recess, instructed and cautioned the jury not to discuss the case among themselves and to permit no one else to discuss it within their hearing, etc. At the request of defense counsel, the court further cautioned the jury not to read newspaper articles concerning this case, if any should appear, or listen to radio or television broadcasts, if any, concerning the case. Had counsel wanted the court to caution the jury not to visit the scene he

should have requested this. The court could not reasonably anticipate a member of the jury might visit the scene. Too, we consider that the cautionary instructions given would carry the message to any reasonably intelligent juror that he should not visit the scene during a trial recess. The court did not err in failing to so specifically instruct the jury.

We have discussed all the questions presented in defendant's after-trial motion that seem to merit consideration, and possibly have taken space unnecessarily to discuss some where it was questionable whether the allegations of his motion actually preserved anything for review.

An examination of the record as required by Supreme Court Rule 28.02, V.A.M.R., discloses no error.

The judgment is affirmed.

All concur.