**STATE of Missouri, Plaintiff–Respondent,**

v.

**Ronnie Dale WALKER, Defendant–Appellant.**

No. 16007.

Missouri Court of Appeals, Southern District, Division Two.

Jan. 8, 1990.

Motion for Rehearing or Transfer Denied Jan. 24, 1990.

Lawrence J. Fleming, Greenberg, Pleban, Fleming & Simons, St. Louis, for defendant-appellant.

William L. Webster, Atty. Gen., Ronald L. Jurgeson, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

HOGAN, Judge.

A jury has found defendant Ronnie Dale Walker guilty of: 1) forcible rape in violation of § 566.030.1, RSMo 1986;[1] 2) armed criminal action in violation of § 571.015; 3) forcible sodomy in violation of § 566.060.2, and 4) first-degree robbery in violation of § 569.020.1(2). Defendant was found to be a prior and persistent offender within the meaning of § 558.016.2 and § 558.016.3 and his punishment was assessed at imprisonment for a term of 15 years for forcible rape; 15 years for armed criminal action; 15 years for forcible sodomy and 15 years for first-degree robbery. It was ordered that the sentences be served consecutively. The defendant has appealed. We affirm.

The defendant has briefed four assignments of error. He argues: 1) the evidence is not sufficient to support the judgments of conviction; 2) the trial court erred in refusing to continue the trial of the case until the pregnancy of the complaining witness was terminated; 3) the trial court erred in refusing to allow a member of the jury to impeach the verdict, and 4) he was subjected to double jeopardy because he was convicted of several offenses arising from the same set of facts.

Defendant's first point is controlled by the rule that in assessing the sufficiency

---

1. References to statutes and rules are to RSMo 1986 and Missouri Rules of Court (19th ed. 1988).

of the evidence, we must accept as true all evidence and inferences that tend to support the verdict and disregard all evidence and inferences to the contrary. The question is whether the evidence, viewed in a light most favorable to the State, is sufficient to support the verdict. *State v. Brown*, 660 S.W.2d 694, 698–99 (Mo. banc 1983); *State v. Story*, 646 S.W.2d 68, 72 (Mo. banc 1983); *State v. Strickland*, 609 S.W.2d 392, 395 (Mo. banc 1980).

Taken and considered in the light most favorable to the verdict, the evidence shows that on May 5, 1988, the defendant's victim, to whom we shall refer as K., was a 16–year–old high school student who had been married for about 9 months. K. and her husband lived in a mobile home in Bollinger County near Arab. About 5 p.m. K. and her husband went to their bedroom to take a nap. At 8:20, she was awakened by a noise which "[s]ounded like someone was trying to come in."

Presently a man appeared at the bedroom door and "asked [K.] who was laying [sic] beside her." K. responded that the man was her husband. The intruder was 4 or 5 feet from K. at the time. It was "light outside." When the man appeared in the bedroom, he had a firearm—"a rifle-type gun"—in his hand. K. "knew in [her] mind exactly who it was." K. identified the intruder as the defendant. K. was acquainted with the defendant and she recognized his voice.

The defendant asked if K.'s husband was asleep. K. responded that he was, and the defendant ordered her to "wake him up." K. did so. The defendant then told K.'s husband to lie prone on the bed and to turn his head away. The defendant ordered K. to tie her husband's hands and feet.

The defendant then ordered K. to remove her clothing. K. and the defendant were about "a foot apart" and the defendant had his gun "fairly close to [her]." K.'s husband was trying to free himself; at the defendant's order, K. "retied [her husband]." The defendant then took K. to the living room at gunpoint and again ordered her to disrobe. He also produced a knife "five or six inches long." The defendant told K. that "if [she] wasn't quiet, that he would kill [her and her husband], slit [their] throats." K. undressed.

The defendant then took K. into a hallway between the living room and the bedroom. He then "unzipped his coat and his pants." We quote the record at this point:

\*     \*     \*     \*     \*     \*

"A. My knees were up and together, and he took his hands and pushed my knees apart, and he then raped me.

Q. Did he do anything with your head?

A. He had ahold of my hair at the time that he was raping me.

Q. You say he raped you, did he have sexual intercourse with you?

A. Yes.

Q. Tell the jury whether his sex organ or his penis penetrated your vagina at that time?

A. Yes.

\*     \*     \*     \*     \*     \*

Q. Would you describe the manner to the jury that he forced you to have intercourse with him?

A. Well, he had the gun and the knife and he forced me to."

\*     \*     \*     \*     \*     \*

After the defendant committed the act of rape, he ordered K. to "get up" and they went to sit on a couch. We again quote from the record:

\*     \*     \*     \*     \*     \*

"Q. What then happened?

A. He then forced me to have oral sex with him.

Q. Would you describe the manner in which he forced you to have oral sex with him?

A. He used his hand on the back of my head and forced my head up and down.

Q. On his penis?

A. Yes.

Q. Did he insert his sex organ, penis, into your mouth that evening?

A. Yes.

\*     \*     \*     \*     \*     \*

Q. During this time that he was forcing your head by holding your hair back and forth on his penis, did he say anything to you?

A. He called me a bitch.

Q. Did he say anything else?

A. He told me that he was going to come and I better swallow all of it.

Q. Or what?

A. He'd kill me.

Q. What then happened?

A. After that was over with—

Q. Did he ejaculate at that time?

A. Yes.

Q. Did you swallow it?

A. I tried not to, but—

Q. Did you?

A. Yes."

\* \* \* \* \* \*

While this act of sodomy was being performed, the defendant's firearm was sitting beside him on the couch.

The defendant then asked K. if she and her husband had any money. K. went to the "counter," got what money she and her husband had—$59—and gave it to the defendant. The defendant then left. Other facts will be noticed in the course of the opinion.

The defendant's contention that the evidence is insufficient to support the judgments of conviction is essentially an argument that K.'s testimony should have been corroborated by other evidence, although he further argues that there was some inconsistency in her testimony and also contends that the jury should have accepted the exculpatory evidence he presented. The rule is and has always been in this State that the uncorroborated testimony of a rape victim is sufficient to sustain a conviction and corroboration is not required unless the testimony of the complaining witness is so contradictory and in conflict with the physical facts, surrounding circumstances and common experience that its validity is rendered doubtful. *State v. Harris*, 620 S.W.2d 349, 353 (Mo. banc 1981); *State v. Neal*, 484 S.W.2d 270, 272[5] (Mo.1972); *State v. King*, 342 Mo. 975, 984–85, 119 S.W.2d 277, 281 (1938).

Given the ordeal to which this victim was subjected, we are not surprised that her first account of it was not in all respects entirely coherent and logical. Uncertainties in the victim's testimony were matters for the jury's resolution. *State v. Harris*, 620 S.W.2d at 353; *State v. Garrett*, 494 S.W.2d 336, 337–38 (Mo.1973). As for the exculpatory testimony—alibi—which defendant argues the jury should have believed, we reiterate that it is not the function of this court to weigh the evidence; the question, once again, is whether the evidence, viewed in a light most favorable to the State, is sufficient to support the verdicts. *State v. Brown*, 660 S.W.2d at 698–99. So taken, the evidence amply supports the judgments of conviction.

■ Defendant's second point is that the trial court erred in denying his motions for a continuance because the prosecutrix was 7 months pregnant at the time of trial. The defendant, in his motion for new trial, contended that K.'s appearance unduly prejudiced and inflamed the jury and unduly impeded his cross-examination of the victim.

The defendant's first motion for a continuance was presented during a suppression hearing held prior to trial. The State indicated its willingness to stipulate that K.'s pregnancy was not the result of rape. The trial court denied the motion. The motion was later renewed and was again denied.

The defendant has not indicated how he was prejudiced by the prosecutrix's appearance. Nothing in the record indicates that the defendant called upon the State to stipulate that K.'s pregnancy was not the result of rape, but certainly counsel cross-examined her vigorously and at length. The general rule—which controls this point—is that a request for a continuance is addressed to the sound discretion of the trial court, and the action of the court will be disturbed only when there is a clear abuse of discretion. *State v. Jordan*, 646 S.W.2d 747, 753 (Mo. banc 1983); *State v. LeBeau*, 306 S.W.2d 482, 486[5] (Mo.1957). We find no clear abuse of discretion and consider the point to be without merit.

■ The defendant further assigns error to the trial court's refusal to permit a juror to impeach the verdict by testifying that she drew adverse inferences from the defendant's failure to testify in disregard of MAI–Cr.3d 308.14, which was given as Instruction No. 5. The point arose in this context: The defendant filed an affidavit in support of his motion for new trial. The affiant, co-counsel in the case, stated upon oath that he had discussed the case with one of the jurors, Edna Cook, who told the affiant that she had found the defendant guilty because he did not take the witness stand and deny his guilt. When the motion for new trial was called for hearing, counsel for defendant proposed to have Mrs. Cook testify in support of the affidavit. The State objected. The trial court permitted Mrs. Cook to testify that she had seen the court's instructions while the jury was deliberating, but did not permit her to testify further. Counsel calls attention to the fact that paragraph 1 of MAI–Cr.3d 308.-14[2] was given as Instruction No. 5 and suggests that Mrs. Cook's testimony, if received, would have established jury misconduct requiring a new trial.

A discussion of the general subject of impeachment of a jury's verdict by a member thereof is well beyond the scope of this modestly-meant opinion. The general rule long recognized in this jurisdiction is that a jury will not be heard to impeach its own verdict. See *State v. Beal*, 474 S.W.2d 830, 833 (Mo.1971) (juror misconstrued the meaning of an item of evidence); *State v. McDaniel*, 392 S.W.2d 310, 318 (Mo.1965) (juror visited the scene of the crime during deliberations, contrary to the court's instructions); *State v. Foster*, 490 S.W.2d 659, 661 (Mo.App.1973) (juror took notes during trial). We are well aware that this rule has been qualified in some decisions; some precedents have suggested that a juror may not impeach his verdict because such testimony is incompetent and that incompetency is subject to being waived by failure to object. Further, *State v. Babb*, 680 S.W.2d 150 (Mo. banc 1984), made in-

quiry of the jurors necessary when a separation after submission occurs. The fact that the precedents are not entirely in harmony was fully discussed in *Shearin v. Fletcher/Mayo/Associates*, 687 S.W.2d 198, 204–207 (Mo.App.1984) (Dixon, J., concurring); we need not reiterate what was said there.

The law embodied in paragraph 1 of MAI–Cr.3d 308.14 has been the law in this State for many years. See § 546.270. The defendant's assignment of error is that a juror should be permitted to impeach his verdict by showing that the jury drew adverse inferences from the defendant's failure to testify. In *State v. McGinnis*, 320 Mo. 228, 233–34, 7 S.W.2d 259, 260[3, 4] (1928) and again in *State v. Davis*, 529 S.W.2d 10, 15[8, 9], 79 A.L.R.3d 1, 7–8 (Mo.App.1975), this very argument was considered and rejected. Nothing presented by the defendant convinces us the rulings in *McGinnis* and in *Davis* were unsound. The point is denied.

■ The defendant's final assignment of error, stripped of its verbiage, is that he has been subjected to double jeopardy because he has been convicted of several offenses arising from the same set of facts. A defendant may properly be convicted of several offenses arising from the same set of facts without invoking double jeopardy so long as the offenses are not identical. *Hackney v. State*, 778 S.W.2d 776, 778 (Mo.App.1989); *State v. Bolen*, 731 S.W.2d 453, 457 (Mo.App.1987). When proof of one offense requires proof of an essential element or fact that is not required to prove the other offense, double jeopardy rights are not infringed. *Hackney v. State*, 778 S.W.2d at 778. In this case each offense charged required proof of an essential element and fact not required by the others. There was no infringement of the defendant's double jeopardy rights and the claim of error is without merit.

We find no error in any respect properly briefed and advanced in this court. Noting

---

**2.** Which reads: "Under the law, a defendant has the right not to testify. No presumption of guilt may be raised and no inference of any kind

may be drawn from the fact that the defendant did not testify."

that the defendant was specifically advised of his right to seek postconviction relief pursuant to Rule 29.15 and that he has not done so, we affirm the judgments of conviction.

PREWITT, Acting P.J., and MAUS, J., concur.